69 A.3d 103

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
GIUSEPPE TEDESCO, DEFENDANT–APPELLANT.

Argued April 29, 2013—Decided June 24, 2013.

180

*Anthony J. Iacullo,* argued the cause for appellant (*Iacullo Martino,* attorneys; *Mr. Iacullo* and *Joshua H. Reinitz,* of counsel and on the brief).

*Seana Pappas,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*David J. Weaver,* Sussex County Prosecutor, attorney; *Gregory R. Mueller,* First Assistant Prosecutor, of counsel and on the brief).

*Richard D. Pompelio,* argued the cause for respondent Michele Ruggieri (*New Jersey Crime Victims' Law Center,* attorneys).

*Jeffrey S. Mandel,* argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (*Cutolo Mandel,* attorneys; *Mr. Mandel* and *Andrew Stein,* on the brief).

*Alexander R. Shalom,* argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (*Edward L. Barocas,* Legal Director, attorney).

*Carol M. Henderson,* Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Jeffrey S. Chiesa,* Attorney General, attorney).

Chief Justice RABNER delivered the opinion of the Court.

Defendant Giuseppe Tedesco stands convicted of murder and now awaits sentencing—a momentous and solemn part of the criminal justice process. Relying on *Rule* 3:21–4(b), he asserts that he has an absolute, unilateral right to be absent from his sentencing hearing and has filed a written waiver with the court.

We find no support in the court rule or elsewhere for defendant's position and hold that trial judges have discretion to decide whether to accept a defendant's waiver. In an attempt to justify a waiver, a defendant must advance specific reasons that demonstrate special circumstances. Judges, in turn, must consider various concerns including the interests of the public, the defendant, the victims, and the State.

In this case, we find that defendant's reasons for wanting to be absent from sentencing are not special or persuasive. Balanced against them are factors that favor his presence: the seriousness of the offense, the victim's interest in having defendant present as she addresses the court, and concerns about public accountability, deterrence, and the administration and integrity of the justice system.

In light of those interests, we conclude that the trial court did not abuse its discretion when it ordered defendant to appear at sentencing. We therefore affirm the judgment of the Appellate

Division, which upheld the trial court's order, and remand for a sentencing hearing at which defendant shall appear.

## I.

In light of the narrow issue presented on appeal, the record before the Court is limited and contains few details about the underlying trial. The record reveals that defendant was indicted for the murder of twenty-two-year-old Alyssa Ruggieri, who was shot six times with a handgun on March 27, 2010. After a month-long trial, a jury convicted defendant on January 10, 2013 of the three counts in the indictment: first-degree murder, *N.J.S.A.* 2C:11–3a(1); second-degree unlawful possession of a handgun, *N.J.S.A.* 2C:39–5b; and second-degree possession of a handgun for an unlawful purpose, *N.J.S.A.* 2C:39–4a.

Three additional charges are pending against defendant, which relate to his conduct in the courtroom shortly after the verdict. In two separate complaints, he is accused of (1) obstruction of the administration of law, *N.J.S.A.* 2C:29–1a, a disorderly persons offense, for allegedly "making eye contact and mouthing the words 'f—— you' to each juror being polled," (2) third-degree aggravated assault, *N.J.S.A.* 2C:12–1b(5)(a), for allegedly pushing a corrections officer and causing him to strike his head on a concrete wall and fracture his fibula, and (3) third-degree terroristic threats, *N.J.S.A.* 2C:12–3a, for allegedly yelling "Devon Ruggieri, you're next mother f——." Mr. Ruggieri is the decedent's brother.

The trial judge, the Honorable N. Peter Conforti, J.S.C., initially scheduled sentencing for March 20, 2013. On February 8, 2013, defendant signed a written waiver in which he stated that he was freely and voluntarily waiving his appearance at sentencing. Defendant also acknowledged various other rights and deadlines in the waiver.

On February 25, 2013, the New Jersey Crime Victims' Law Center, representing Michele Ruggieri, the victim's mother, moved to compel defendant's presence at sentencing. The State joined the motion on March 8, 2013.

At a hearing the following week, the trial court concluded that defendant did not have a right to be absent from sentencing. The court first rejected defendant's argument that the victim lacked standing. In support of that finding, the sentencing court cited the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38, which details various rights that crime victims and witnesses possess, *see N.J.S.A.* 52:4B–36, and grants victims standing to file a motion to enforce those rights, *N.J.S.A.* 52:4B–36r. The court also referenced the Victim's Rights Amendment, which grants victims the right to be treated with "fairness, compassion and respect." *N.J. Const.* art. I, ¶ 22. Victims also have standing to enforce their rights under the State Constitution. *N.J.S.A.* 52:4B–36r. In addition, the court noted that the State, a party with standing, had joined in the motion to compel.

As to the merits, the trial court held that it "alone has the inherent discretion and authority to direct and control" sentencing hearings, "including the power to accept or reject a defendant's waiver of appearance." Among other factors, the trial judge emphasized the violent nature of the offense and society's interest in having defendant hear the victim's and the court's comments.

The trial court also addressed two points defendant raised. The court discounted concerns about transporting defendant from state prison. In addition, the sentencing judge explained that ample court security would be in place to ensure everyone's safety. Defendant's disruptive behavior at the time of the verdict, the judge observed, could not justify a request to waive his appearance at sentencing.

For those and other reasons, the court denied defendant's request and ordered him to appear on March 20, 2013. The judge also denied defendant's motion for a stay pending appeal.

Defendant sought emergent relief from the Appellate Division. After granting defendant's application to hear the matter, the Appellate Division affirmed substantially for the reasons stated by Judge Conforti. In an order dated March 18, 2013, the panel added that whatever interest defendant has in being absent "sim-

ply pales in comparison with the victim's constitutional right to be treated with fairness, compassion and respect," her right to deliver a victim-impact statement, and "the State's interest in having defendant present at sentencing to face those he has wronged."

The Appellate Division denied defendant's request for a stay on March 19, 2013. Later the same day, this Court granted defendant's motion for leave to appeal and stayed his sentencing date. We also granted motions from the Attorney General, the Association of Criminal Defense Lawyers (ACDL), and the American Civil Liberties Union of New Jersey (ACLU) to participate as amicus curiae.

## II.

Defendant raises a number of arguments. First, he contends that the victim lacks standing. He asserts that a victim may only file a motion to enforce a right conferred in the Crime Victim's Bill of Rights or the Victim's Rights Amendment. According to defendant, because those sources do not expressly afford victims the right to address a defendant at sentencing, Michele Ruggieri lacked standing to file a motion to compel defendant's presence. Defendant does not dispute that Ms. Ruggieri may make a statement to the court at the hearing about the impact of the crime under *N.J.S.A.* 52:4B–36n.

Second, defendant claims that he must be permitted to waive his appearance at sentencing because he has complied with *Rule* 3:21–4(b). The rule provides, in part, that "[s]entence shall not be imposed unless the defendant is present or has filed a written waiver of the right to be present." *Ibid.* Defendant does not claim a constitutional right to be absent; instead, he contends that the rule "vest[s] all of the power within the defendant" to decide if he will be present at sentencing. Defendant maintains that the trial and appellate court decisions do not cite binding authority that can compel a defendant's presence or provide criteria to evaluate and override a waiver.

Defendant also submits that his absence would "eliminate the extra expense and delay" of transporting him from state prison in Trenton to the courthouse in Newton, and the need for "significant prophylactic security measures" to ensure the safety of everyone in the courtroom.

The State argues that a defendant does not have a unilateral or absolute right to be sentenced in absentia. According to the State, *Rule* 3:21–4(b) does not require judges to accept a written waiver and leaves the court with discretion to compel a defendant's appearance. The State also asserts that a defendant's constitutional right to be present does not confer an opposite right to be absent. For support, the State points to *State v. Dunne*, 124 *N.J.* 303, 316, 590 *A*.2d 1144 (1991), in which this Court found that a defendant's right to a jury trial does not establish a right to insist on a bench trial. *Dunne* instead outlined an approach for trial courts to follow when they evaluate a defendant's request to waive a jury trial. *Id.* at 317–19, 590 *A*.2d 1144.

The State submits that Judge Conforti properly balanced the relevant factors and did not abuse his discretion in ordering defendant to appear at sentencing. The State also argues that defendant's own misconduct has created security issues that the trial court can control.

Michele Ruggieri maintains that the trial court correctly ruled that she has standing. She relies on the authority contained in the Crime Victim's Bill of Rights and the Victim's Rights Amendment and submits that victims have standing to enforce their right to be treated with fairness, compassion, respect, and dignity.

Ms. Ruggieri argues that the right to deliver a victim-impact statement "is perhaps the single most important right of a crime victim under the Crime Victim's Bill of Rights." She claims that victim-impact statements "will be meaningless" if defendant "can simply turn his back to us" and be absent from court.

Ms. Ruggieri agrees with the State that *Rule* 3:21–4(b) does not grant defendants an absolute right to waive their appearance at

sentencing. She argues that a defendant's desire to be absent "is subordinate under the law to the rights of the crime victims" and contends that the trial court properly exercised its discretion to require defendant to appear.

The Attorney General also argues that the decisions of the trial court and the Appellate Division are correct. In addition to supporting arguments that the State and the victim raised, the Attorney General contends that defendants must present extraordinary circumstances to justify their absence at sentencing. The Attorney General also urges this Court to adapt the standards outlined in *Dunne* to this setting. The Attorney General addresses various factors that favor defendant's appearance and stresses that victims should be allowed to confront defendants at sentencing and explain how their actions affected the victims' lives.

The ACDL and ACLU both support defendant's position. The ACDL submits that although defendants do not have an absolute right to be absent from sentencing, trial courts should allow them to waive the right to appear if certain procedural and substantive safeguards are met. The ACDL maintains that "[s]entencing has evolved into a predominantly ministerial act," that victims have no "right" to address a defendant under the law, that defendants can waive various constitutional rights, and that compelling a defendant's presence does not serve the purposes of sentencing or further public policy. The ACDL also cautions that sentencing "does not include punishment in the form of verbal rebuke or public ridicule."

The ACLU argues that the purpose of a sentencing hearing is to guide the court to an informed decision about the appropriate sentence rather than to punish the defendant. The hearing itself, according to the ACLU, is not meant to force defendants to atone for their conduct or face opprobrium. The ACLU further argues that the Crime Victim's Bill of Rights grants victims the right to address the court but not the right to confront the defendant or compel a defendant's presence at sentencing.

### III.

■ We begin with defendant's standing argument. Defendant recognizes that the Crime Victim's Bill of Rights confers standing on victims to enforce any of the rights set forth in the statute or the Victim's Rights Amendment to the Constitution. *See N.J.S.A.* 52:4B–36r. But he claims that neither source affords victims the specific right to speak directly to defendants at sentencing. As a result, he argues that the victim lacks standing to compel his appearance under *N.J.S.A.* 52:4B–36r. To counter that argument, the victim cites broader language in the statute and the Constitution that affords her the right to be treated with fairness, compassion, respect, and dignity, and claims standing to assert those rights in the context of this proceeding.

We need not devote much time to defendant's standing claim. The decedent's mother certainly qualifies as a victim under the law. *See N.J. Const.* art. I, ¶ 22. Represented by the New Jersey Crime Victims' Law Center, she filed a motion on February 25, 2013 to compel defendant's presence at sentencing. The State joined in that motion two weeks later.

No one can question the State's standing in this matter. The trial and appellate courts thus properly proceeded to address the merits. As we do likewise, we will consider the arguments of the parties, the victim, and all of the amici. The victim's arguments should be heard and evaluated, if not as a party with standing, then as an amicus under *Rule* 1:13–9. The Crime Victims' Law Center that represents the victim has appeared as amicus before the Court in the past. We are satisfied that the victim's participation in this case "will assist in the resolution of an issue of public importance." *Ibid.* We therefore turn to the merits.

### IV.

■ In our system of justice, we entrust trial judges with the responsibility to control courtroom proceedings at trial and sen-

tencing. A judge's discretion in that area is bounded by the law and court rules. We therefore look to those rules for guidance.

The Sixth Amendment to the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee a defendant's right to be present at trial. *United States v. Gagnon*, 470 *U.S.* 522, 526, 105 *S.Ct.* 1482, 1484, 84 *L.Ed.*2d 486, 490 (1985); *State v. A.R.*, 213 *N.J.* 542, 557–58, 65 *A.*3d 818 (2013); *State v. Dellisanti*, 203 *N.J.* 444, 453, 4 *A.*3d 531 (2010). Two court rules reinforce that right in the context of sentencing: *Rule* 3:16(b) and *Rule* 3:21–4(b). *Rule* 3:16(b) declares that "[t]he defendant shall be present at every stage of the trial ... and at the imposition of sentence, unless otherwise provided by Rule." The balance of *Rule* 3:16(b) addresses a defendant's waiver of the right to be present at trial but is silent about sentencing waivers. *Rule* 3:21–4(b) speaks to that question instead. It states that

> [s]entence shall not be imposed unless the defendant is present or has filed a *written waiver of the right to be present.* Before imposing sentence the court shall address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment. The defendant may answer personally or by his or her attorney.
>
> [*Ibid.* (emphasis added).] [1]

In other words, the court cannot impose sentence without either the defendant in the courtroom or a valid written waiver on file.

From those sources, it is clear that defendants have the right to be present at sentencing. Based on the court rules, defendant also claims an absolute right to be absent, but nothing in the language of the rules provides such a right. Defendants can

---

[1] *Rule* 3:21–4 also details various steps that a court must follow at sentencing. *See, e.g., R.* 3:21–4(c) (requiring court to inform defendant of penalties for failure to adhere to conditions of probation); *R.* 3:21–4(g) (requiring court to state reasons for imposing sentence); *R.* 3:21–4(h) (requiring court to advise defendant of right to appeal and of time limitations for filing of petition for post-conviction relief); *R.* 3:21–4(j) (requiring court to state approximate period of time defendant will actually serve in custody).

submit a written waiver to the court under *Rule* 3:21–4(b), but the rules do not grant defendants the unilateral power to decide whether they will appear at sentencing.

The history underlying the rule provides no support for defendant's position either. The Court added the critical language in *Rule* 3:21–4(b)—"[s]entence shall not be imposed unless the defendant is present or has filed a written waiver of the right to be present"—in July 1992. *R.* 3:21–4(b) (effective Sept. 1, 1992). The amendment stemmed from this Court's decision in *State v. Hudson*, 119 *N.J.* 165, 574 *A.*2d 434 (1990). In that case, the Court reinstated the convictions of two defendants who were released on bail pending trial. *Id.* at 167, 574 *A.*2d 434. Both defendants attended court on the morning of the scheduled trial date but failed to appear in the afternoon or at any time during trial. *Id.* at 169–71, 574 *A.*2d 434. The trial court found that the defendants had elected to exercise their "right to absent themselves from their trial," and both were tried and convicted in absentia. *Id.* at 170, 574 *A.*2d 434.

This Court agreed with the trial court and held that "a defendant's knowing, voluntary, and unjustified absence before or after trial has commenced does not prevent trial from proceeding *in absentia.*" *Id.* at 182, 574 *A.*2d 434. To provide defendants with adequate notice, the Court directed that the rules be amended "to require that trial courts inform a criminal defendant at the arraignment of the right to be present at trial and the consequences of the failure to appear." *Ibid.* The Court added that *Rule* 3:16 should "be amended to eliminate the distinction between defendants who elect to leave the trial after it commences and those who waive the right to be present before the trial begins." *Ibid.* The Court referred the recommended changes to the Criminal Practice Committee. *Ibid.*

In response to the *Hudson* decision, the Committee proposed new language for four rules: *Rule* 3:9–1 (covering notice at arraignment); *Rule* 3:16 (addressing waiver at trial); *Rule* 3:20–2 (requiring defendants who claim they did not waive appearance at

trial to move for new trial before sentencing); and *Rule* 3:21–4, the change that is at the heart of this appeal. *See Report of the Supreme Court Committee on Criminal Practice* at 2–3, 5–8 (Jan. 15, 1992) (Committee Report).

Nothing in the *Hudson* opinion or the Committee Report suggests that the change to *Rule* 3:21–4 was meant to give defendants the power to decide on their own, without court review, that they do not have to appear for sentencing. The language in the rule and its underlying history, rather, simply give defendants the ability to file a written waiver with the court. Whether to accept that waiver is a decision for the trial judge.

■ That approach is consistent with well-settled law. As the United States Supreme Court explained in *Singer v. United States,*

[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. For example, although a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial; although he can waive his right to be tried in the State and district where the crime was committed, he cannot in all cases compel transfer of the case to another district; and although he can waive his right to be confronted by the witnesses against him, it has never been seriously suggested that he can thereby compel the Government to try the case by stipulation.

[380 *U.S.* 24, 34–35, 85 *S.Ct.* 783, 790, 13 *L.Ed.*2d 630, 638 (1965) (internal citations omitted).]

The same holds true here. Although defendant can waive his constitutional right to appear at sentencing, he cannot force the court to sentence him in absentia. *Cf. Dunne, supra,* 124 *N.J.* at 306, 312, 590 *A.*2d 1144 (holding defendant does not have unilateral right to non-jury trial); *R.* 1:8–1(a) (requiring criminal actions to be tried by jury unless defendant, with approval of court, waives jury trial).

V.

■ In deciding whether to grant a defendant's request to waive his or her presence at sentencing, trial judges should be guided by a number of relevant factors: the interests of the

public, the defendant, the victims, and the State. We consider each in turn to help guide judges in the exercise of their discretion. We also draw on the analysis in *Dunne*, which offers a helpful framework.

In *Dunne, supra*, the defendant confessed that he stabbed a man and was convicted of murder. 124 *N.J.* at 306, 307, 590 *A.*2d 1144. Defendant moved for a non-jury trial because he planned to raise an insanity defense "that would require testimony on the abnormal homosexual fantasies that may have moved [him] to attack the victim." *Id.* at 307, 590 *A.*2d 1144. He feared an adverse jury reaction to that defense. *Ibid.* The trial court denied the motion, and the defendant later appealed his conviction on the ground that he had a right to be tried by a judge and not a jury. *Id.* at 308, 590 *A.*2d 1144. Alternatively, he claimed that the court abused its discretion in denying his request. *Ibid.*

This Court rejected both claims. The Court first determined that the right to a trial by jury does not convey to defendants a unilateral or absolute right to demand a non-jury trial. *Id.* at 306, 309, 312, 590 *A.*2d 1144. Next, the Court found that the trial court did not abuse its discretion when it declined to conduct a bench trial. *Id.* at 306, 313–20, 590 *A.*2d 1144.

■ To guide a trial court's exercise of discretion in the future, the Court outlined three determinations judges should make: (1) "whether a defendant has voluntarily, knowingly, and competently waived the constitutional right to jury trial with advice of counsel"; (2) "whether the waiver is tendered in good faith or . . . to procure an otherwise impermissible advantage"; and (3) "whether, considering all relevant factors," the court "should grant or deny the defendant's request in the circumstances of the case." *Id.* at 317, 590 *A.*2d 1144. The relevant factors include the gravity of the crime, the State's position, and "the existence of a highly-charged emotional atmosphere," among other issues. *Ibid.*

■ Some of the same concerns apply to defendants who seek to waive their presence at sentencing. We therefore adopt the

first two prongs of *Dunne's* framework in their entirety and modify and expand *Dunne's* third prong. Trial judges must assess whether a defendant's waiver of the right to appear at sentencing is voluntary, knowing, and competent, and made with the advice of counsel. *See ibid.* To make that determination, a judge must question the defendant in open court or, in special cases, by a live video, digital, or equivalent connection. As a practical matter, this inquiry is only required if a court is inclined to grant defendant's request. Trial judges should also determine whether a defendant's waiver is offered in good faith. *See ibid.* Finally, courts must consider and balance the relevant interests. *Ibid.*

The public has an interest in the effective and fair administration of justice. That calls for resolving matters fairly, openly, and expeditiously, in the presence of all parties and counsel, and in a way that promotes respect for our system of justice. *See Globe Newspaper Co. v. Superior Court,* 457 *U.S.* 596, 606, 102 *S.Ct.* 2613, 2619–20, 73 *L.Ed.*2d 248, 256–57 (1982); *State v. Deutsch,* 34 *N.J.* 190, 206, 168 *A.*2d 12 (1961).

The public also has an interest in holding defendants publicly accountable for their actions once they have been convicted at a fair trial. *United States v. Turner,* 532 *F.Supp.* 913, 915 (N.D.Cal.1982) (quoting Note, *Procedural Due Process at Judicial Sentencing for Felony,* 81 *Harv. L.Rev.* 821, 831 (1968)). The more serious the offense, the stronger that interest is. *See Dunne, supra,* 124 *N.J.* at 314–15, 317, 590 *A.*2d 1144. In the context of sentencing in a democratic society, public accountability includes having the judge speak openly and directly to the defendant.

The public—and the court system itself—share a concern for conducting thorough proceedings that minimize the risk of error and lead to informed results. There are obvious benefits to having defendants present at sentencing to achieve those aims: not just to address the sentencing judge, as the rule provides, *see*

*R.* 3:21–4(b), but also to respond to, or assist counsel in answering, arguments from the State or statements by any victims. Defendants are often best suited to reply to claims that relate to aggravating and mitigating factors and the overall imposition of sentence. *See N.J.S.A.* 2C:44–1. Correcting errors on the spot also limits appellate issues and potential post-conviction petitions. In addition, the presence of a defendant helps ensure that he or she understands the sentence imposed and the right to file an appeal or seek other relief. *See R.* 3:21–4(g), (h).

 A solemn sentencing proceeding, with all parties present, not only furthers the actual administration of justice, it also fosters the appearance of dispensing justice. *See Offutt v. United States,* 348 *U.S.* 11, 14, 75 *S.Ct.* 11, 13, 99 *L.Ed.* 11, 16 (1954) ("[J]ustice must satisfy the appearance of justice."). That result, in turn, promotes public respect for, and confidence in, the justice system, which is critically important. *See Dunne, supra,* 124 *N.J.* at 315, 590 *A.*2d 1144; *In re Commitment of Edward S.,* 118 *N.J.* 118, 148, 570 *A.*2d 917 (1990).

 Courts must also consider a defendant's interest in being absent from sentencing. Defendants must advance specific reasons that demonstrate special circumstances. *See Dunne, supra,* 124 *N.J.* at 317, 590 *A.*2d 1144 (noting "[c]ourts should be sensitive to special circumstances" when they consider requests for bench trials); *see also United States v. Ammar,* 919 *F.*2d 13, 17 (3d Cir.1990) (citing *United States v. Brown,* 456 *F.*2d 1112, 1114 (5th Cir.1972)) (stating that "sentencing *in absentia* should be reserved for extraordinary circumstances" under federal law).[2] A serious illness from which a defendant is unlikely to recover, for

---

[2] The current version of *Rule* 43 of the Federal Rules of Criminal Procedure requires that "the defendant must be present at ... sentencing." *Fed.R.Crim.P.* 43(a)(3). The rule provides exceptions for misdemeanor offenses, *Fed.R.Crim.P.* 43(b)(2), a defendant's voluntary absence in a noncapital case or persistent disruptive behavior in the courtroom, when the defendant was initially present at trial or had pled guilty, *Fed. R.Crim. P.* 43(c)(1)(B), (C), and certain other situations.

example, could justify granting a waiver request. *See, e.g., United States v. Boykin,* 222 *F.Supp.* 398 (D.Md.1963) (accepting waiver of seventy-eight-year-old defendant hospitalized for serious heart condition).

 The victims' interests must be considered as well. In recent years, a series of changes in the law has steadily strengthened the rights of victims to participate in criminal proceedings. In 1985, the Legislature passed the landmark Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38, to recognize and protect the rights of crime victims and witnesses, *N.J.S.A.* 52:4B–35. The law states that victims are entitled "[t]o be treated with dignity and compassion by the criminal justice system," *N.J.S.A.* 52:4B–36a, and "[t]o be informed about the criminal justice process," *N.J.S.A.* 52:4B–36b. The original statute also identified a number of specific rights. *See L.* 1985, *c.* 249, § 3 (codified as amended at *N.J.S.A.* 52:4B–36a to *l* ).

The law was amended on March 1, 1991 to afford victims two additional rights: to submit a written statement to the prosecutor about the crime's impact, *N.J.S.A.* 52:4B–36m; and "[t]o make, prior to sentencing, an in-person statement directly to the sentencing court concerning the impact of the crime," *N.J.S.A.* 52:4B–36n. *See L.* 1991, *c.* 44, § 1; *State v. Blackmon,* 202 *N.J.* 283, 298–99, 997 *A.*2d 194 (2010).

At the time the Legislature added subsection (n), the court rules did not provide for written waivers of the right to be present at sentencing. That language did not appear in *Rule* 3:21–4 until the following year, in September 1992. *R.* 3:21–4(b) (effective Sept. 1, 1992). Thus, when the Legislature gave victims the express right to address the sentencing judge in open court, lawmakers could have reasonably expected that the defendant would be present as well.

Later in 1991, the voters ratified an amendment to the State Constitution, which directly addressed the rights of crime victims. The Victim's Rights Amendment provides that

[a] victim of a crime shall be treated with fairness, compassion and respect by the criminal justice system. A victim of a crime shall not be denied the right to be present at public judicial proceedings except when, prior to completing testimony as a witness, the victim is properly sequestered in accordance with law or the Rules Governing the Courts of the State of New Jersey. A victim of a crime shall be entitled to those rights and remedies as may be provided by the Legislature. For the purposes of this paragraph, "victim of a crime" means: a) a person who has suffered physical or psychological injury or has incurred loss of or damage to personal or real property as a result of a crime or an incident involving another person operating a motor vehicle while under the influence of drugs or alcohol, and b) the spouse, parent, legal guardian, grandparent, child or sibling of the decedent in the case of a criminal homicide.

[*N.J. Const.* art. I, ¶ 22.]

The Crime Victim's Bill of Rights was amended again in 2012. *See L.* 2012, *c.* 27, § 1. Among other changes, the amendment gave victims the right to be free from "harassment or abuse by any person including the defendant." *Ibid.* (codified at *N.J.S.A.* 52:4B–36c). The revisions also included the standing provision discussed above. *Ibid.* (codified at *N.J.S.A.* 52:4B–36r).

Those developments reveal a steady movement in the law to recognize and enhance the rights of crime victims. *See Blackmon, supra,* 202 *N.J.* at 298–99, 997 *A.*2d 194 (reviewing recent history of victims' rights); *State v. Muhammad,* 145 *N.J.* 23, 32–35, 678 *A.*2d 164 (1996) (same).

There can be little doubt that from the standpoint of the victims, who are to be treated with fairness, compassion, respect, and dignity, their statements at sentencing will carry more meaning if they are heard not only by the judge but the defendant as well. That said, sentencing hearings in general are not a time to ridicule or verbally attack a defendant. As always, judges must ensure the solemnity of the proceedings.

Finally, courts should consider the State's interest in deterring others. *Turner, supra,* 532 *F.Supp.* at 915 (quoting Note, *Procedural Due Process at Judicial Sentencing for Felony, supra,* 81 *Harv. L.Rev.* at 831). That interest is also affected by the severity of the crime.

■ Balancing the above factors requires a fact-specific analysis in each case. To facilitate appellate review for abuse of discretion, *see Blackmon, supra,* 202 *N.J.* at 297, 997 *A.*2d 194; *Dunne, supra,* 124 *N.J.* at 314, sentencing judges should provide a statement of reasons when they rule on a defendant's waiver request, *see Dunne, supra,* 124 *N.J.* at 317–18, 590 *A.*2d 1144.

## VI.

■ We next apply the above principles to the facts of this case. First, we consider defendant's reasons for wanting to be absent from sentencing. We find that they are neither special nor persuasive. Defendant refers to practical difficulties in transporting him from the New Jersey State Prison in Trenton to the Sussex County courthouse, but it is hard to see how transportation within our compact State can be a legitimate concern.

Defendant also raises a general alarm about "the safety of the defendant, the officers, the attorneys, court staff and the public," in light of the acrimonious history of the case. Yet from the limited record before us, it appears that defendant himself may have been responsible for at least some of the disruption at trial. Regardless, the question of security should be left to the trial judge with the assistance of sheriff's officers. The court is in the best position to address any safety concerns and ensure decorum. If necessary, the trial judge can make adjustments during the proceeding and reassess defendant's waiver request.

Second, defendant stands convicted by a jury of murder. The seriousness of the offense weighs in favor of his appearance at sentencing to promote public accountability for his actions and general deterrence.

Finally, the remaining factors discussed above-ranging from the public's interest in the conduct of the hearing and the overall administration of justice, to the victim's interest in having the defendant present as she explains how her daughter's murder has affected her—also militate in favor of defendant's personal appearance.

## VII.

We add one final point. We do not assume that defendants will be unruly or disruptive at sentencing because they have filed a waiver request that has been denied. If in a rare case the proceedings head in that direction, we are confident that trial judges will maintain proper decorum. Judges have various ways to achieve that aim. They can take breaks during a hearing and remove the defendant from the courtroom to restore calm. They can also cite or threaten to cite a disruptive defendant with contempt and advise the defendant that the sentence for contempt would likely result in a consecutive term of imprisonment. *See State v. Yarbough*, 100 *N.J.* 627, 498 *A.*2d 1239 (1985). We recognize that threat might have little effect on a defendant already facing a very severe sentence.

In the event a defendant insists on continuously disrupting a sentencing hearing, we echo the deep reservations expressed by the United States Supreme Court in *Illinois v. Allen*, 397 *U.S.* 337, 344–45, 90 *S.Ct.* 1057, 1061, 25 *L.Ed.*2d 353, 359 (1970), about shackling and gagging the defendant to complete the proceeding. As the Court noted, "the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.* at 344, 90 *S.Ct.* at 1061, 25 *L.Ed.*2d at 359; *see also Deck v. Missouri*, 544 *U.S.* 622, 631, 125 *S.Ct.* 2007, 2013, 161 *L.Ed.*2d 953, 964 (2005) ("[J]udges must seek to maintain a judicial process that is a dignified process.").

██ We cannot envision a set of circumstances when that approach would be the wisest course. To ask victims to speak over a defendant who is bent on disrupting their words would rob the hearing of the very dignity and respect the victims are due. In the end, if there is no possible way to restore order and contain a defendant's insistent, defiant behavior, a judge can direct that the defendant be taken to a holding cell outfitted with a video or audio feed that will relay the proceedings to the defendant remotely.

## VIII.

For the reasons stated above, we affirm the judgment of the Appellate Division and remand for sentencing consistent with the principles discussed above.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, RODRÍGUEZ (t/a) and CUFF (t/a)—7.