**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3217-19

PRESBYTERIAN CHURCH OF
THE PALISADES, INC., a New
Jersey religious corporation,
EASTERN KOREAN
PRESBYTERY, a New Jersey
religious corporation, and THE
ADMINISTRATIVE
COMMISSION OF THE
PRESBYTERIAN CHURCH
OF THE PALISADES, INC.,

        Plaintiffs-Respondents/
        Cross-Appellants,

v.

ROBERT H. HWANG and JONG
KIL JEUNG,

        Defendants-Appellants/
        Cross-Respondents.

_____

244 OLD TAPPAN ROAD, LLC,

        Intervenor-Respondent.

_____

Argued November 9, 2021 – Decided November 29, 2021

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000068-19.

Evan L. Goldman argued the cause for appellants/cross-respondents (Goldman Davis Krumholz & Dillon, PC, attorneys; Evan L. Goldman, Mark D. Ygarza, and Kristen Ragon, on the briefs).

Ellen O'Connell argued the cause for respondents/cross-appellants (Inglesino, Webster, Wyciskala & Taylor, LLC, attorneys; Ellen O'Connell, of counsel and on the briefs).

Graff Silverstein, LLP, attorneys for intervenor-respondent 244 Old Tappan Road, LLC, join in the brief of respondents/cross-appellants Presbyterian Church of the Palisades, Inc., Eastern Korean Presbytery, and The Administrative Commission of the Presbyterian Church of the Palisades, Inc.

PER CURIAM

Defendants Robert Hwang and Jong Kil Jeung appeal from the Chancery Division's August 22, 2019 order granting summary judgment to plaintiffs Presbyterian Church of the Palisades, Inc. (Church), Eastern Korean Presbytery (EKP), and the Administrative Commission of the Presbyterian Church of the Palisades in this dispute over the ownership of Church property located in Old Tappan. The trial court determined that the Presbyterian Church USA

(PC(USA)), as represented by the Administrative Commission and the EKP, properly held title to the Church's property, and to the proceeds from the sale of that property to intervenor Old Tappan Road LLC.  Plaintiffs cross-appeal from the court's March 11, 2020 order compelling them to escrow the sale proceeds pending appeal.

Having considered the parties' respective arguments in light of the record and the applicable law, we affirm the August 22, 2019 order, vacate the March 11, 2020 order, and remand to the trial court for the entry of an order directing the release of the escrowed funds to plaintiffs.

I.

We begin by reciting the most salient facts.  The Presbyterian denomination is a hierarchical church.  It consists, in descending order, of a General Assembly, a Synod, a Presbytery, and the individual congregation, represented by a Session.  The Session is a group of seven "elders" elected by the congregation which constitutes the governing body of the church. Presbyteries have the authority over the sessions and congregations that fall within each of their geographical mandates, including requiring compliance with the General Assembly's Book of Order.  The Synod is a regional entity that has authority over the presbyteries.  The General Assembly covers the entire United

A-3217-19

States and has authority over the synods and presbyteries. The PC(USA) is considered the General Assembly.

Hyon Kim, Executive Presbytery of the EKP, stated in a certification that the EKP is a New Jersey religious corporation affiliated with the PC(USA). It is the governing body of the Korean-speaking PC(USA) churches in the metropolitan New York area.

The Book of Order is the Constitution of the PC(USA) and governs the temporal and spiritual affairs of all the governing bodies. As to real property, the Book of Order provides:

> The provisions of this Constitution prescribing the manner in which decisions are made, reviewed, and corrected within this church are applicable to all matters pertaining to property.
>
> All property held by or for a congregation, a presbytery, a synod, the General Assembly, or the Presbyterian Church (U.S.A.) . . . is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.).
>
> . . . .
>
> A congregation shall not sell, mortgage or otherwise encumber any of its real property and it shall not acquire real property subject to an encumbrance or condition without the written permission of the presbytery transmitted through the session of the congregation.

A-3217-19

> A congregation shall not lease its real property used for purposes of worship, or lease for more than five years any of its other real property, without the written permission of the presbytery transmitted through the session of the congregation.
> [(subsection headings omitted).]

The Church was formed in March 1984, and incorporated in May 1984, as amended in February 1993. Its articles of incorporation, as contained in the record, do not state anything regarding the holding and disposition of real property. The Church's property was held in trust by a corporation, the Presbyterian Church of the Palisades, Inc., formed under Title 16, specifically, N.J.S.A 16:11-1 to -24. The Church was originally organized as part of the Korean Presbyterian Church in America.

In 1991, the Church purchased three acres of property in Old Tappan for $750,000 on which the church sanctuary was constructed. Construction of the church cost $4 million. The Church purchased an additional five acres of nearby property for $1,050,000 in April 2000. In December 2004, the Church took out a $3.2 million mortgage on the property of the constructed church from Valley National Bank.

In March 2006, the Church voted to affiliate with the PC(U.S.) and it thereafter belonged to the EKP. The Church's Bylaws, adopted on August 26, 2007, said nothing about the Church property beyond authorizing the board of

trustees to decide on matters involving the acquisition and disposal of property. The bylaws further stated that all matters not specified in this bylaw follow the Book of Order of the PC(USA).

In June 2016, the Church defaulted on the Valley National Bank mortgage loan. The bank subsequently obtained a judgment of foreclosure and writ of execution. The outstanding mortgage, plus interest and penalties, was approximately $2.7 million. On July 17, 2017, the Church applied for a $2.5 million loan from PC(USA). In December 2017, intervenor purchased the judgment of foreclosure and writ of execution.

At a meeting on January 22, 2018, the EKP approved a resolution permitting it to assume jurisdiction over the Church's Session through the appointment of an Administrative Commission. In support, the resolution cited the fact that there was only one Session member instead of seven, the Church's financial situation, and alleged misconduct in the handling of the mortgage on the property. The Administrative Commission was authorized to be the sole authority to manage the Church's affairs and assets, including real estate and bank accounts.

According to Kim, on December 16, 2018, he and the chair of the Administrative Commission, Hu Nam-Nam, attempted to enter the Church

6

property but defendants physically prevented them from accessing it. Subsequently, the Administrative Commission warned defendants not to enter Church grounds, but defendants continued to do so, resulting in "unpleasant confrontations during a meeting of the congregation." Nam-Nam stated that as a result of defendants' behavior, he brought disciplinary charges against them, which resulted in defendants' dismissal from both Church membership and the PC(USA). Defendants nonetheless held a board of trustees meeting, with just the two of them present. Because of what Kim described as this "fraudulent" meeting, the Church's account at Bank of America was frozen.

In March 2019, defendants filed a bankruptcy petition on the Church's behalf in an effort to save the Church's assets and, according to defendant Jeung, due to a very steep decline in membership revenue. The bankruptcy action was ultimately dismissed. On September 12, 2019, intervenor purchased the Church property.

Defendant Hwang claimed in his certification that the majority of the seventy members of the Church did not want the EKP to make decisions affecting the Church's finances, and no longer wanted to be affiliated with the PC(USA). Hwang further alleged that the Church did not seek the PC(USA)'s

approval when it entered into negotiations for the sale of the five-acre parcel in August 2017. The sale was not consummated.

In addition, according to Hwang, the Church permitted a Korean language school and an adult education program to operate at the site, without the Church seeking approval from the PC(USA). The Church also rented its site for choir performances, weddings and funerals without the PC(USA)'s approval. In addition, it rented space to an unaffiliated church to conduct services without approval. The Church also did not seek approval for fundraisers it held and donations it made.

On March 13, 2019, plaintiffs filed a complaint in the Chancery Division seeking a judgment declaring that the minutes of the annual meeting of the Church were fraudulent, that defendants had no right to represent that they were trustees, directors, officers, or agents of the Church, and that the Administrative Commission was the sole legal representative of the Church. In addition, plaintiffs alleged fraud, trespass, attempted conversion, tortious interference with contractual relations, and civil conspiracy.

On the same date, the trial court issued an order to show cause restraining defendants from representing that they were trustees, directors, officers, or agents of the Church, and from entering Church property and contacting

members of the Administrative Commission. On April 29, 2019, the court declared that the members of the Administrative Commission were the sole individuals authorized to serve as signatories for all Church accounts.

As part of their May 9, 2019 answer, defendants filed what they called a "third-party complaint"[1] seeking a judgment declaring that the Church was the sole owner of the real property and the bank accounts in dispute, and disassociating the Church from the EKP and the PC(USA).

The parties thereafter filed cross-motions for summary judgment. Following oral argument, the trial court entered an order declaring that the Administrative Commission was the sole authority for purposes of the ownership and control of Church property, both real and personal, and dismissing defendant's third-party complaint for failure to state a claim.

To place the Chancery Division's decision in context, we briefly summarize the law concerning a court's consideration of intra-church disputes. "To ensure that judicial adjudications are confined to their proper civil sphere, the United States Supreme Court has developed two approaches to church disputes: the deference rule and the rule of 'neutral principles.'" Solid Rock

---

[1] Because defendants only named plaintiffs as defendants in this "third-party complaint," it appears they intended to file a counterclaim for the declaratory relief they sought in the pleading.

Baptist Church v. Carlton, 347 N.J. Super. 180, 191 (App. Div. 2002) (citing Maryland & Virginia Eldership v. Church of God of Sharpsburg, 396 U.S. 367, 367-68 (1970); Kleppinger v. Anglican Cath. Church, 314 N.J. Super. 613, 621-22 (Ch. Div. 1998)).

When applying the deference rule, a court must "accept the authority of a recognized religious body in resolving a particular doctrinal question." Elmora Hebrew Ctr., Inc. v. Fishman, 125 N.J. 404, 414 (1991). In disputes involving a church with a hierarchical structure, a court "must defer to the authoritative ruling of the highest church authority in the hierarchy to have considered the religious question at issue." Solid Rock Baptist Church, 347 N.J. Super. at 192 (citations omitted). In resolving disputes within a congregational, rather than hierarchical, church, a court "should defer to resolutions by a majority (or other appropriate subgroup) of the church's governing body." Elmora Hebrew Ctr., 125 N.J. at 414 (citing Chavis v. Rowe, 93 N.J. 103, 108 (1983)).

A "neutral principles" approach may be applied regardless of the governing structure of a particular church. Solid Rock Baptist Church, 347 N.J. Super. at 192. Under this approach, a court applies neutral principles of law to "disputed questions not implicating religious doctrine or practice" and "examin[es] and interpret[s] . . . church documents such as deeds, constitutions,

10

by-laws, and the like in accordance with wholly secular legal rules whose applications do not entail theological or doctrinal evaluations." Ibid. (citations omitted).

Analyzing the intra-church property dispute question presented in this case under the deference approach, the trial court concluded:

> In establishing the Administrative Commission and granting it original jurisdiction of the Session, the Presbytery acted under the denomination's rules of polity and review of the decision on [sic] Presbytery are outside the jurisdiction of this court. The Court must also defer to the decision of the Presbytery establishing the Administrative Commission and giving the Commissioners the authority to control the assets of Palisades Church. Thus, the precedents require deference to the Presbytery's decisions concerning polity and the Trust Clause.

Applying the neutral principles of law approach, the trial court found the Church's voluntary affiliation with PC(USA) in 2006 to be significant, particularly the provision in the Church's Bylaws adopting the Book of Order and its trust clause. The Church thereby agreed that its property and assets were held in trust for the Presbytery. The court also held that the Church was governed by Title 16 which, under N.J.S.A. 16:11-4, requires that Church property be used only for the purposes set forth by the PC(USA).

In addition, the trial court rejected defendants' argument that the Administrative Commission's actions conflicted with the will of the Church congregation because deciding the "will" of a congregation would violate the First Amendment under a neutral principles analysis. The court further found there was not "even a scintilla of evidence . . . indicating [d]efendants' clear and unambiguous desire to remain an independent congregation when they joined [PC(USA).]"

Thereafter, the trial court granted Old Tappan Road's motion to intervene in the matter. After this court dismissed defendants' premature notice of appeal as interlocutory, the court dismissed the remaining counts of plaintiffs' complaint on March 11, 2020. On that same date, the court granted defendants' motion to require that plaintiffs escrow the proceeds of the sale of the Church property pending appeal. This appeal and cross-appeal followed.

## II.

In Point I of their brief, defendants contend that the trial court should not have used the deferential approach to the intra-church dispute, and that it incorrectly applied the neutral principles of law approach in granting plaintiffs' motion for summary judgment and determining that the Church did not lawfully own the property. In Point II, defendants argue that the Church's

12

acknowledgment of the Book of Order related solely to spiritual matters and not to Church property.

Our review of a trial court's grant of summary judgment is de novo, applying the same legal standard as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); see also R. 4:46-2(c).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 214 N.J. 189, 199 (2016)).

13

Applying these standards, we are satisfied that the trial court correctly applied both the deference and neutral principles of law approaches and held that the Church property was owned by plaintiffs as set forth in the Book of Order. As noted above, the Book of Order states:

> All property held by or for a congregation, a presbytery, a synod, the General Assembly, or the Presbyterian Church (U.S.A.) . . . is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.).

In the absence of an express trust provision, courts should defer to a hierarchical church's determination of a church property dispute. Protestant Episcopal Church v. Graves, 83 N.J. 572, 575 (1980). "[I]n a hierarchical situation where there [is] a property dispute between a subordinate local parish and the general church, civil courts must accept the authoritative ruling of the higher authority within the hierarchy." Id. at 577. Where the resolution of a church property dispute may be a consequence of an ecclesiastical determination, courts "must accept that consequence as the incidental effect of an ecclesiastical determination that is not subject to judicial abrogation, having been reached by the final church judicatory in which authority to make the decision resides." Id. at 578 (quoting Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 720 (1976)).

As noted above, the Presbyterian Church is a hierarchical church.  See Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 446 n.5 (1969).  Therefore, under the deference approach, courts must accept the authoritative ruling of the higher authority within that hierarchy.  Accordingly, the determination of the EKP and the Administrative Commission, as that higher authority, controls.  Under these circumstances, we conclude, as did the trial court, that the Church property was owned by the PC(USA).

Defendants argue that New Jersey has discarded the deference approach in favor of the neutral principles of law approach, citing Scotts Afr. Union Methodist Protestant Church v. Conf. of Afr. Union First Colored Methodist Protestant Church, 98 F.3d 78, 92-94 (3rd Cir. 1996).  In that case, the Third Circuit found a "decided progression of New Jersey court decisions toward adoption of a neutral-principles approach in resolving intra[-]church property disputes . . . ." Id. at 94.

Contrary to defendants' contention, however, the New Jersey Supreme Court has not discarded the deference approach in cases involving hierarchical churches.  Indeed, our Court has stated that "[o]nly where no hierarchical control is involved[,] should the neutral principles of law principle be called into play." Graves, 83 N.J. at 580.  Nonetheless, the Elmora Court, 125 N.J. at 414,

commented that "a court may, when appropriate, apply neutral principles of law to determine disputed questions that do not implicate religious doctrine."

Thus, it is reasonable to conclude that while the New Jersey Supreme Court may favor neutral principles of law, it has not abandoned the deference approach entirely. In any event, an application of the neutral principles of law approach clearly demonstrates that the trial court was correct in holding that the Church's property was subject to the provisions in the Book of Order.

In Jones v. Wolf, 443 U.S. 595, 597 (1979), the United States Supreme Court addressed the question of whether civil courts may address a dispute over the ownership of church property without becoming entangled in religious doctrine in violation of the First and Fourteenth Amendments. The case involved a dispute between factions of a local Presbyterian church. Id. at 597-98. Noting that the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes, the Court nonetheless held that application of "neutral principles of law" to resolve such disputes is permissible. Id. at 602-03.

That method relies exclusively on secular, objective, and well-established concepts of trust and property law familiar to lawyers and judges, thereby avoiding entanglement in questions of religious doctrine, polity, and practice.

16

Id. at 603. However, in undertaking such an examination, the civil court must take special care to scrutinize the relevant documents in purely secular terms. Id. at 604. Thus, where the corporate charter incorporates religious concepts in the provisions relating to the ownership of property, if its interpretation would require the civil court to resolve a religious controversy, the court must leave resolution of that issue to the authoritative ecclesiastical body. Ibid.

In Kelly v. McIntire, 123 N.J. Eq. 351, 354 (Ch. 1938), a local Presbyterian church declared its severance from the parent church and repudiated the parent's authority. Members of the local church who remained loyal to the parent church brought an action to prevent the local church from using its property in a manner inconsistent with the rules and custom of the parent church. Id. at 352-53. The court stated: "The principle seems to be firmly established that a congregation belonging to a religious denomination and subject to the constitution, faith and doctrines thereof cannot use its property for a purpose other than that sanctioned by the denomination." Id. at 361. Thus, the court found in favor of the members loyal to the parent church. Id. at 366.

In Scotts, 98 F.3d at 79-82, the national conference of the denomination in question adopted a church property resolution as part of its bylaws whereby title to church property held by its affiliates was to be held in trust for the

conference. The affiliated church in question had been incorporated some seventy-five years prior to the adoption of the resolution and its certificate of incorporation provided that the church's trustees could not dispose of any real estate except by a two-thirds vote of its membership. Id. at 82. The Third Circuit held that, under New Jersey law, the provisions of a church's charter or articles of incorporation had priority over contradictory or inconsistent bylaws. Id. at 95. Thus, the resolution regarding title to property could not override the certificate of incorporation's two-thirds vote requirement. Id. at 96.

Here, the Church was incorporated after the Book of Order had been issued, and the Book of Order was in effect at the time of the Church's affiliation with the PC(USA). Moreover, there is nothing in the Church's articles of incorporation that specifically conflicts with the Book of Order as to the Church's property, and its bylaws stated that it follows the provisions in the Book of Order unless otherwise specified. No property exception was contained in the bylaws. Thus, under the neutral principles of law approach, plaintiffs clearly controlled the Church property.

In an attempt to avoid this result, defendants cite our recently unpublished opinion[2] in Wisseh v. Aquino, No. A-4767-18 (App. Div. Dec. 9, 2020) (slip op.

---

[2] Unpublished opinions do not constitute binding precedent. R. 1:36-3.

at 2), which also involved a dispute over the control of property between a local Presbyterian church and the PC(USA). In that case, we held that control of the church property lay with the local church board based on a Royal Charter granted to the church in 1753 that invested control of the property in the local church. Id. at 20. Because the Royal Charter predated New Jersey statutory law and was saved from repeal under N.J.S.A. 16:1-28, we held that its provisions remained in effect and could not be altered by the Book of Order. Id. at 17-20.

The present case is clearly distinguishable from Wisseh. Here, the Church was not created by a Royal Charter that predated the creation of a national Presbyterian church or invested it with control of the Church's property. That the Church was formed and acquired the subject property prior to affiliating with the PC(USA) does not warrant application of the Wisseh holding. Defendants do not cite to any precedent supporting the proposition that the Book of Order's property provision does not apply to church property acquired prior to a local church's affiliation with the PC(USA), absent a charter similar to Wisseh.

Defendants also seek to bring this case within the holding in Wisseh by pointing to actions the Church took regarding its property without approval of the higher levels of the denomination. These actions included the unconsummated sale of the property, renting space, letting a school operate on

the site, and holding weddings and other functions. However, we noted in Wisseh that the local church in that case had been involved in property transactions for over eighty years, including leasing property that was part of the Prudential Center Arena complex Id. at 8-9. Thus, Wisseh is clearly distinguishable from this case, where the Church's board of trustees did not complete even one property transaction.

Defendants also rely on two other unpublished opinions, New St. John Christian Methodist Episcopal Church, Inc. v. Collier, No. A-689-04 (App. Div. Feb. 9, 2006), and New St. John Christian Methodist Episcopal Church, Inc. v. Collier, No A-3372-06 (App. Div. June 9, 2008). However, in the former case, the court merely held that a neutral principles of law analysis applied to the intra-church dispute, while in the latter the court summarily found that substantial credible evidence supported the trial court's determination that the church conference's Book of Discipline did not create an implied trust of the local church's property on behalf of the conference. Thus, neither case aids defendants' argument.

Defendants next cite a pair of non-precedential Pennsylvania cases, Presbytery of Donegal v. Calhoun, 513 A.2d 531 (Pa. Commw. Ct. 1986) and Presbytery of Beaver-Butler v. Middlesex Presbyterian Church, 489 A.2d 1317

20

(Pa. 1985). However, in <u>Presbytery of Donegal</u>, the local church had disaffiliated from the national church prior to the appointment of an Administrative Commission and the latter's effort to impress a trust on the local church's property. 513 A.2d at 536. Therefore, that case is distinguishable.

The same distinguishing feature is present in <u>Presbytery of Beaver-Butler</u>. In addition, in that case, the local church disaffiliated from the parent church prior to the amendment to the Book of Order with respect to affiliated churches. 489 A.2d at 1323-24.

Therefore, under a neutral principles of law analysis, as with the deference approach, the Book of Order's provision that all property of an affiliated church is to be held in trust for the use and benefit of the PC(USA) is controlling. Accordingly, the trial court properly held that the PC(USA) was entitled to title of the Church property.

### III.

In Point III, defendants argue that the trial court erred in relying on Title 16, specifically N.J.S.A. 16:11-4, to support its holding that the Church property could only be used for the purposes set forth in the PC(USA)'s Book of Order because the statute does not apply to the PC(USA), does not apply because the Church has an incorporated board of trustees, and does not apply because

application of the statute would violate the neutral principles of law analysis. These contentions lack merit.

N.J.S.A. 16:11-4 provides:

> In the exercise of any power necessary to the proper care of the property held for the uses of the congregation, such corporation shall be subject to such authority over . . . the uses to which the church buildings and other properties may be put, as may be committed by the constitution of the United Presbyterian Church in the United States of America to the session of the church or to any other spiritual officers, and shall have no power to make by-laws or exercise any power with respect to matters so committed.

Initially, defendants claim that this statute does not apply because it refers to the United Presbyterian Church in the United States of America rather than the PC(USA). See N.J.S.A. 16:11-1. Because the former church no longer exists as a result of a 1983 merger, defendants contend that N.J.S.A. 16:11-4 is not relevant to the current dispute.

Here, however, defendants elevate form over substance. The statutes in Chapter 16 governing the Presbyterian denomination, N.J.S.A 16:11-1 to -24, were intended to apply to the highest Presbyterian church in America that encompassed New Jersey. Prior to 1983, that was the United Presbyterian Church in the United States of America. After 1983, it was the PC(USA). To

22

accept defendants' argument would result in the negation of N.J.S.A. 16:11-4. A statute should not be interpreted so as to render any portion of it a nullity. Smith v. Dir., Div. of Tax'n 108 N.J. 19, 27-28 (1987) (citing Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 68 (1978)). Therefore, we reject defendants' contention.

Defendants next argue that Chapter 11 of Title 16 does not apply to the Church because it has an incorporated board of trustees. Again, we disagree.

N.J.S.A. 16:11-1 prescribes the manner in which a congregation affiliated with the Presbyterian Church, not having an incorporated board of trustees, "may elect and incorporate a board of trustees . . . ." It does not state that Chapter 11 only applies to Presbyterian churches without an incorporated board of trustees. Thus, N.J.S.A. 16:11-6 provides for the succession of trustees of a church that has an incorporated board, and N.J.S.A. 16:11-7 permits a change in the number of trustees. Therefore, defendants' argument lacks merit.

Finally on this point, defendants claim that application of Title 16 would violate the neutral principles of law analysis. However, they offer no support for the proposition that applying statutes specifically addressed to a denomination violates those principles. To the contrary, our courts have consistently held that resort to state statutes to determine ownership of church

property is consistent with the neutral principles of law approach. See, e.g., Graves, 83 N.J. at 578; Odatalla v. Odatalla, 355 N.J. Super. 305, 310 (Ch. Div. 2002).

Therefore, we affirm the Chancery Division's August 22, 2019 order.

IV.

In their cross-appeal, plaintiffs contend that in the event of an affirmance of the trial court's August 22, 2019, the March 11, 2020 order escrowing the funds from the sale of the property should be vacated, and the funds released to them. We agree.

Because we have affirmed the trial court's order granting summary judgment to plaintiffs, we vacate the March 11, 2020 order and remand the matter to the trial court for the prompt entry of an order directing the release of the escrowed funds to plaintiffs.

Affirmed in part; vacated in part; and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION