JUSTICE LaVECCHIA delivered the opinion of the Court.
**310 Defendant Donnell Jones asserts that an infringement of his right to allocute and present mitigating information occurred when, after he addressed the sentencing court, he did not have an **311 opportunity to respond to the State's final comments before the court imposed its sentence. We granted certification to consider defendant's arguments about his sentencing, and we now conclude that they are unavailing.
In our judicial system, the trial court controls the flow of proceedings in the courtroom. As a reviewing court, we apply the abuse of discretion standard when examining the trial court's exercise of that control. That review standard pertains in this appeal.
We conclude, as did the Appellate Division, that the sentencing court did not abuse its discretion during defendant's sentencing proceedings. Defendant made an allocution, speaking to the court and continuing until he stated he was through. Then, during the State's final statement prior to sentencing, the court acted appropriately when it prevented defendant from interrupting the prosecutor's remarks. At the conclusion of the prosecutor's comments, defendant made no further request of the court. Nor did his attorney. We are unpersuaded that the court's conduct of these proceedings infringed defendant's allocution right in any way.
*290 To promote some best practices, we identify factors for a court to consider when deciding what to allow when hearing final statements from the parties prior to sentencing. In addition, this matter underscores the importance of a properly developed record when a defendant claims infringement, not denial, of the right of allocution.
I.
On June 14, 2012, defendant and a female accomplice committed an armed robbery against a woman and her young daughter in a New Brunswick park. On August 29, 2012, a Middlesex County grand jury issued an indictment against defendant. The indictment charged defendant with first-degree armed robbery, N.J.S.A. 2C:15-1 ; second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a) ; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) ; fourth-degree unlawful possession of **312 a large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j) ; fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(f) ; third-degree receiving stolen property, N.J.S.A. 2C:20-7 ; and third-degree terroristic threats, N.J.S.A. 2C:12-3(a). On the same date, a separate indictment charged defendant with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).
Defendant pleaded guilty to the first-degree armed robbery and second-degree certain persons not to have weapons charges. In exchange, the State agreed to dismiss the other charges. The State further agreed to recommend a sentence of fifteen years' imprisonment on the armed-robbery charge, subject to an eighty-five percent parole disqualifier and five years' parole supervision. That sentence would run concurrently with a seven-year sentence, subject to five years of parole ineligibility, on the certain-persons charge.
Defendant and the State appeared for a sentencing proceeding on May 10, 2013. The critical events for this appeal took place during that proceeding.
First, defense counsel acknowledged that he reviewed the pre-sentence report with defendant and requested a correction: defendant had said that the gun was not loaded at the time of the robbery. The court noted the correction. Defense counsel then concluded his remarks by asking the court to honor the plea agreement when determining defendant's sentence.
Next, the court asked defendant whether he wanted to say anything. The following exchange occurred:
DEFENDANT: First of all, I am guilty of-of my crime, a hundred percent guilty. Am I sorry for what I did? No. I'm not.
THE COURT: You're not sorry?
DEFENDANT: 'Cause it-it was not supposed to even happen to her. That was not-she was not the-the target that this was happening to. You know-
THE COURT: Please, close the door. Close the door, please. I'm on the record.
Go ahead.
DEFENDANT: This was-you know, me-it's hard out there for me finding a job. Okay. With my record, it was-that-that's one of the reasons why I did what I **313 did. I needed money and I needed it fast. Okay. Like I said, I'm sorry it happened to her. It was not supposed to happen to her.
THE COURT: What do you mean it wasn't supposed to happen to her?
DEFENDANT: She-
THE COURT: You did it to her.
*291 DEFENDANT: Right. It was-she was not the target. She-this was-this was not supposed to happen to her. It really was not.
THE COURT: Okay.
DEFENDANT: Other than that, then that's it.
The court then turned its attention to the State, allowing the prosecutor to make her final remarks before sentencing defendant:
THE COURT: Prosecutor?
[PROSECUTOR]: Judge, that's unbelievable to me because he and Ms. Drew picked the target. They sat in a park and picked the target. Originally-he did say in his statement originally he was going to rob a business, a convenience store or some type of business. He switched targets.
THE COURT: Yes.
[PROSECUTOR]: He-she is the intended target once she-he changes his mind in the park.
DEFENDANT: Can I say something?
THE COURT: No.
[PROSECUTOR]: But be that as it may, this was an intentional act. He brandished a gun. Although he didn't say he pointed it at her. He said he just took it out and just showed it to her. He pointed it at her, according to the victim's statement. She's there and a three-year-old-her three-year-old daughter is on the swing set with her and she was afraid. And at gunpoint, he takes-well, he and Ms. Drew. I think Ms. Drew actually got the money and the ring, the woman's wedding ring. And then Ms. Drew flushed it down the toilet. He demanded the money, according to his statement, and it was given to Ms. Drew. And they walked away. And-
THE COURT: They took money and her wedding ring?
[PROSECUTOR]: Yeah.
THE COURT: Yes. Right.
[PROSECUTOR]: Um-hum. Twenty dollars and her wedding ring, Your Honor.
THE COURT: Right.
[PROSECUTOR]: And there was a little girl sitting there on the swing set. This is a serious act. And as far as we're concerned, there was really more than one victim, the three-year-old and the mother-
THE COURT: Thank you.
[PROSECUTOR]:-who were innocent victims just playing in a park when this happened to them. It's an armed robbery .... [Defendant] had a serious record, **314 five prior indictable convictions making him extended term eligible and disorderly persons convictions. And to say that he needed money and, therefore, it's okay to rob anyone, much less whether it was originally her that was the intended victim or a business is unbelievable to me. That shows that there's a risk he will commit another offense, because he seems to be saying it would be okay if he robbed a business instead of this woman and her kid on the swing set, which again, an armed robbery is an armed robbery. So any armed robbery is bad. So he seems to be sort of justifying it by saying, he needed money and because he has a prior record .... To justify trying to rob people, anyone, by saying, well, I have a bad prior record and therefore I can't get a job, so I have to rob people is just unbelievable-an unbelievable rationalization. So we would ask that Factors 3, 6, and 9 apply to this defendant, no mitigating factors.
THE COURT: Yes.
[PROSECUTOR]: And that he be sentenced to the fifteen years with eighty-five percent. He was looking at twenty *292 to life. This is a generous offer. Thank you.
[ (emphasis added).]
Defendant did not speak again nor did he or his counsel ask to speak again.
The court then turned to defendant and made the following statement before imposing sentence:
I am sentencing the defendant on his sixth and seventh Superior Court convictions. I'm shocked by what the defendant said today that he is not sorry because she wasn't the target. I guess he intended to have a business or somebody else be the target, but since he couldn't get a job and he needed money, that's a justification for what he did. And I'm sure that that's no solace to the victim or the fact that the gun wasn't loaded. She certainly didn't know that. This poor victim with her three-year-old child was robbed at gunpoint by this defendant. I can only imagine how frightening that was for her. I don't know what the defendant was thinking when he did it. Obviously he wasn't thinking and he's learned nothing from his prior record, conviction, sentences.
The court found three aggravating factors to be applicable: three, the risk that defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3) ; six, the extent of defendant's prior record, N.J.S.A. 2C:44-1(a)(6) ; and nine, the need for deterring defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The court found no mitigating factors. See N.J.S.A. 2C:44-1(b).
The court sentenced defendant to fifteen years' imprisonment for first-degree armed robbery, subject to an eighty-five percent parole ineligibility period pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2(a), and five years' parole supervision. On the charge of second-degree certain persons not to have weapons, the court imposed a concurrent sentence of seven years' imprisonment **315 subject to five years of parole ineligibility. Although defendant was extended-term eligible, the sentences imposed by the court adhered precisely to defendant's plea bargain.
Defendant did not file a direct appeal. He filed a pro se petition for post-conviction relief (PCR) alleging ineffective assistance of counsel due to his attorney's failure to file a notice of appeal. After navigating through the PCR trial and appellate processes, defendant's sentencing issues were addressed at an excessive sentencing oral argument (ESOA) on December 14, 2016.[1] Defendant sought to have his case remanded for resentencing because the sentencing court (1) failed to provide a statement of reasons for aggravating factor nine, (2) wrongly considered defendant's arrest history, and (3) violated his right to allocute and to present mitigating information. In an order, the ESOA panel affirmed defendant's sentence, holding that the court did not abuse its discretion in sentencing defendant and that defendant was not denied his right to an allocution. The panel remanded the matter for entry of a corrected judgment of conviction to reflect the jail credit and gap-time credit that defendant and the State had agreed was correct.
*293 Defendant petitioned this Court to review his claim that his right to allocute and present mitigating information was violated. We granted his petition. 229 N.J. 617, 164 A.3d 409 (2017).
II.
A.
Defendant seeks to have his sentence set aside and the matter remanded for resentencing. He argues that the trial court abused **316 its discretion by preventing him from responding to the prosecutor's comments and by not providing a reason for the denial of that opportunity. Although not raised before the trial court, defendant contends that he was not allowed an opportunity (1) to address his motivation and (2) to respond to asserted new substantive comments by the prosecutor in her remarks.
Defendant premises his argument on the assertion that the right to allocution serves mitigating purposes, promotes fairness in the justice system, and provides a holistic effect that betters both the defendant and the victim. According to defendant, in order for the beneficial purposes of allocution to be served, the right must be construed liberally, and a sentencing court should be required to provide a reason whenever it denies a person an opportunity to address the court. Further, he maintains that a court should grant defendants sufficient time to speak unless there are "legitimate, and well-explained, reasons for not doing so." He argues that, "when a defendant is not afforded the opportunity to present mitigating information, and the purposes of allocution are not served, a new sentence is required without the need to show any prejudice."
Defendant concedes that the right to allocution can be reasonably restricted and that a court may prohibit a defendant from "rambling" or from addressing irrelevant information, but he asserts that a court must allow a defendant a meaningful opportunity to address the court concerning information that is sufficiently important. He maintains that the full scope of the right is unclear in this state and that neither case law nor court rules have specified exactly when a defendant is allowed to speak, how much a defendant is allowed to say, or when the sentencing court may prohibit a defendant from speaking.
In sum, defendant contends that, because he was deprived of an opportunity to speak after the prosecutor's remarks without any justification or explanation by the sentencing court, the prosecutor was able to "take control" of defendant's allocution and use his own comments against him. Hence, defendant claims that a remand **317 for resentencing is necessary in these circumstances and that he should not be required to demonstrate that he was prejudiced.
B.
The State argues that a defendant's right to speak at sentencing is subject to reasonable limitations left to the trial court's discretion and that the trial court did not abuse its discretion here. The State cites to a number of cases, albeit arising in capital sentencing settings, to support its argument that the right of allocution is "narrowly-defined," is of a "limited scope," and is subject to the court's supervision. According to the State, in exercising such a "narrow right," a defendant is not "permitted to rebut any facts in evidence, to deny his guilt, or indeed, to voice an expression of remorse that contradicts evidentiary facts."
The State maintains that, here, defendant exercised his right of allocution. He had an opportunity to "make a full and fair statement to the court." According to the State, it was therefore within the trial *294 court's sound discretion, in its exercise of control over the proceedings, to refuse to allow him to interrupt and speak again while the prosecutor was addressing the court.
The State's position starts from the baseline that a trial court's role in sentencing is to identify relevant aggravating and mitigating factors that are supported by the record. The State argues that because defendant already had provided a full statement to the court, his second attempt to speak presumably would have been merely an attempt to dispute the prosecutor's factual assertions and spin facts for his benefit. Thus, in the State's view, a second opportunity for defendant to speak would not have contributed to the court's consideration of aggravating and mitigating factors.
To the extent that the purpose of allocution is to give the defendant a chance to express remorse and to appeal for mercy, the State further argues that defendant made clear that he was neither remorseful nor seeking mercy: He admitted he was "a **318 hundred percent guilty" and stated that he was not sorry for what he did.
Finally, the State emphasizes that defendant received the sentence bargained for and therefore suffered no prejudice.
III.
Fairly recently, we underscored the discretion reposed in the judges who are called on to preside over criminal sentencing proceedings. In State v. Tedesco, 214 N.J. 177, 188-89, 69 A.3d 103 (2013), we stated that "[i]n our system of justice, we entrust trial judges with the responsibility to control courtroom proceedings at trial and sentencing." The trial court is and must be the master of the courtroom in such a setting.
The trial court is tasked with the important responsibility of maintaining the dignity and fairness of a sentencing proceeding while balancing the interests of all who are affected by the sentencing of a defendant. An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard. See State v. Robinson, 217 N.J. 594, 603, 92 A.3d 656 (2014) (citing State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984), and State v. Blackmon, 202 N.J. 283, 297, 997 A.2d 194 (2010) ). "A judge's discretion in that area is bounded by the law and court rules." Tedesco, 214 N.J. at 189, 69 A.3d 103.
With respect to a criminal defendant's right to speak at sentencing, the right to allocution in New Jersey is fixed by court rule. Rule 3:21-4(b) guides the sentencing courts and provides:
Sentence shall not be imposed unless the defendant is present or has filed a written waiver of the right to be present. Before imposing sentence the court shall address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment. The defendant may answer personally or by his or her attorney.
Our case law recognizes that a defendant's right to allocute arose from the common law. State v. DiFrisco, 137 N.J. 434, 478, 645 A.2d 734 (1994) (citing State v. Zola, 112 N.J. 384, 428-29, 431-32, 548 A.2d 1022 (1988) (noting common law origin **319 and that right does not have recognized federal or state constitutional roots) ). The right of allocution allows a criminal defendant "to present to the [sentencer] his plea in mitigation" because, as courts have recognized, "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, *295 with halting eloquence, speak for himself." Zola, 112 N.J. at 428, 548 A.2d 1022 (quoting Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (plurality opinion) ). Thus, when a trial court fails to afford a defendant the opportunity to make an allocution, in violation of Rule 3:21-4(b), the error is structural and the matter must be remanded for resentencing without regard to whether there has been a showing of prejudice. State v. Cerce, 46 N.J. 387, 396-97, 217 A.2d 319 (1966) (noting that, on direct appeal, appellate court may remand for resentencing without showing of prejudice when defendant's right to allocute has been denied); see also State v. Hester, 192 N.J. 289, 927 A.2d 1288 (2007) (remanding summarily for resentencing where right of allocution was denied).
Most of this state's law on allocution has come in the context of capital cases. In that setting, we referred to allocution as a "narrowly-defined" right, and as one that allows "a capital defendant to make a brief unsworn statement in mitigation to the jury at the close of the presentation of evidence in the penalty phase." Zola, 112 N.J. at 431-32, 548 A.2d 1022. In DiFrisco, we acknowledged a two-fold purpose: "First, it reflects our commonly-held belief that our civilization should afford every defendant an opportunity to ask for mercy. Second, it permits a defendant to impress a jury with his or her feelings of remorse." 137 N.J. at 478, 645 A.2d 734 (citing Zola, 112 N.J. at 430-31, 548 A.2d 1022 ). In the freighted context of facing imposition of a capital sentence, we acknowledged that a defendant's allocution right is limited to explaining to the jury that he or she is worthy of having his or her life spared:
Although a defendant may not contradict other testimony or argue legal points in allocution, a defendant may make a statement in order to allow a jury to ascertain **320 that he or she is an "individual capable of feeling and expressing remorse and of demonstrating some measure of hope for the future."
[ Id. at 477, 645 A.2d 734 (quoting Zola, 112 N.J. at 430, 548 A.2d 1022 ).]
There is not much case law in this state on the parameters of allocutions in non-capital settings. In a different setting relating to who, other than the defendant, may speak before the court imposes sentence, we cautioned against importing concepts from the "unique setting" of a capital case into "ordinary sentencing proceedings." Blackmon, 202 N.J. at 303-04, 997 A.2d 194 (noting that justification for allowing defendant's family members to plead for mercy in capital cases did not apply to ordinary sentencing proceedings).
In Blackmon, we established that, "other than defendants, and crime victims or their survivors, there is no absolute right to speak at a sentencing proceeding." Id. at 305, 997 A.2d 194. We committed decisions about who else may speak-other than the defendant-and with what restrictions to the discretion of the sentencing court but cautioned that the exercise of that discretion "must be accompanied by some expression of reasons sufficient to permit appellate review." Id. at 307, 997 A.2d 194. In so holding, we expressed the concern that denying a request to speak without providing a reason for the denial could create "the appearance that the proceeding was arbitrary or unfair." Id. at 305-06, 997 A.2d 194. Ultimately, Justice Hoens, writing for the Court, instructed that judges should use their discretion in a manner that "ensure[s] that the proceedings themselves bear the hallmarks of fairness." Id. at 306, 997 A.2d 194.
It is against that limited backdrop that we approach the question of the fairness of defendant's sentencing process and *296 his claim of infringement on his right to allocute.
IV.
In the matter before the Court, defendant's arguments on appeal are undermined by his lack of a record to substantiate his present contentions. He failed to advance his claim that he had something more to say that pertained to his allocution. He did not **321 raise the issue before the trial court after the prosecutor finished speaking or in the form of a post-sentencing application. Moreover, on appeal, defendant has never offered a sworn statement-or any statement for that matter-indicating what he claims he would have said after the prosecutor spoke. The lack of any record is a fatal flaw in defendant's arguments. See State v. Robinson, 200 N.J. 1, 20, 974 A.2d 1057 (2009) (noting "the obvious need to create a complete record and to preserve issues for appeal").
A trial judge is not expected to be clairvoyant. When neither defendant nor his counsel made any request to be heard after the prosecutor concluded her remarks, the court reasonably proceeded with the sentencing. Defendant faults the trial court for not making inquiry of him at that point, but we see no abuse of discretion in the face of the silence from defendant and his counsel. See State v. Perry, 124 N.J. 128, 163, 590 A.2d 624 (1991) ("Our analysis of the duties of a trial judge must be 'seasoned by a degree of deference to defense counsel's strategic decisions.' " (quoting State v. Marshall, 123 N.J. 1, 92, 586 A.2d 85 (1991) ) ).
All we have is appellate counsel's argument that defendant was denied an opportunity to address purported new substantive material covered by the State in its presentation. Defendant relies on cases from other jurisdictions for the proposition that the right to an allocution includes "the opportunity to respond" to any "new substantive remarks" made by a prosecutor where a defendant has either already spoken or has initially declined to speak. See, e.g., Shifflett v. State, 315 Md. 382, 554 A.2d 814, 817 (1989). Those out-of-state cases, defendant contends, comport with the well-recognized purposes of allocution in this state. No doubt, the rationale of allowing a defendant to respond to new substantive material fits within the hallmarks of what constitutes a fair sentencing proceeding. However, that well-constructed argument by appellate counsel is unavailing on the facts of this case.[2]
**322 The State represented in oral argument before this Court that all factual matters addressed by the prosecutor were known by the parties, either provided in discovery to defendant and his counsel or addressed in the pre-sentence report that was shared with the defense. As noted, defense counsel requested a minor alteration in that report, and the correction was approved by the sentencing court, prior to the court's proceeding with the sentencing. There simply was no surprise information raised for the first time by the prosecutor in her remarks, we are informed. Appellate counsel for defendant, who was not trial counsel, was unable to rebut the State's representation to the Court.
We have no reason not to accept the State's representation as true and accurate.[3] We accept that nothing new was *297 being raised, so defendant's theoretical claim about a need to "address new material" is not applicable here. Moreover, if defendant wished to say something that somehow addressed mitigation after he heard the State's remarks, he had an obligation to make a record to support that claim. We still do not know what defendant asserts he wants to add. On a cold transcript, all we see is defendant's and his counsel's silence at the close of the State's remarks. We trust that the trial court judge, who is in control of the courtroom and views the proceedings, is aware of any non-verbal communication that may have been evident between the two. As noted earlier, defendant was extended-term eligible and he negotiated a plea that avoided the imposition of an extended term.
Defendant's appellate problem is generic to any defendant who has not made a record before the trial court. The onus is on defendant to make his record to support an issue to be pursued on appeal. Defendant should have done that while before the trial court-if not during the sentencing proceeding, then at the very least on a post-sentencing application. See **323 Robinson, 200 N.J. at 20, 974 A.2d 1057. We will not remand a matter on supposition when even now we have not heard what it is that the defendant was prevented from telling the sentencing court after the State's final remarks.
That said, because defendant interrupted the State's remarks earlier, it would have been helpful for the sentencing court to have closed out the proceeding, before imposing sentence, by asking defendant whether there was anything he wanted to add. See, e.g., State v. Yates, 195 Ohio App.3d 33, 958 N.E.2d 640, 642, 644-45 (2011) (remanding for determination of whether information introduced during allocution was truly new information due to lack of record on subject). Here, we would have the trial court's perspective on whether the information raised by the State was new substantive material. From an appellate review perspective, that would be preferable.
But defendant's claim about "new material" falls short here. We will not presume error. On the record that we do have, there is no basis to find an abuse of discretion in the sentencing court's handling of this sentencing proceeding. See Tedesco, 214 N.J. at 188-89, 69 A.3d 103.
In the future, when it is necessary for the sentencing court to assess whether claimed new material advanced in closing by the State is truly "new substantive material" to which the defendant seeks to respond, the court should first consider whether the defendant knew about the fact. If a fact is covered in discovery or in the pre-sentence report, it should not be considered new. If information is truly new substantive material, the defendant generally should be allowed to respond. See, e.g., Shifflett, 554 A.2d at 817 (requiring as part of right to allocution that defendant be allowed "to respond to the new substantive remarks of the prosecutor"); Yates, 958 N.E.2d at 644 (requiring as part of right to allocution that defendant be allowed to address new information "introduced and considered by the trial court at sentencing"). Other factors that the court may consider when deciding how to exercise its discretion to permit a defendant more **324 time to speak are: (1) did the defendant speak already; (2) was the defendant interrupting and abusive; and (3) does the defendant have something to say that is responsive to the new substantive material.
In leaving such matters to the sound discretion of the sentencing court, we caution that the exercise of that discretion should "be accompanied by some expression of reasons sufficient to permit *298 appellate review." See Blackmon, 202 N.J. at 307, 997 A.2d 194. Sentencing proceedings should be fair in actuality and in appearance. A hallmark of fairness is for the court to explain its actions. See id. at 306, 997 A.2d 194. If a court determines to deny a defendant's request to speak further about some information that is raised in the State's sentencing remarks when the State speaks last, providing some reason or statement for the denial will promote the fairness of the proceeding.
To summarize, here the trial court honored defendant's right to make his allocution. If defendant wished to have the court permit him to respond to the State's final remarks before the imposition of sentence, it was incumbent on defendant to place that request on the record. In order to convince the sentencing court that new substantive material was being raised, defendant should have made a record on that point. He did not. Defendant's assertion, rebutted by the State, that the prosecutor's remarks plowed new substantive ground deserves no weight. With a properly developed record, we would expect a sentencing court to give a reason for denying a defendant an opportunity to respond to demonstrated new material. We reaffirm that the court has the right to control its courtroom and to move the proceeding forward to conclusion.
V.
The judgment of the Appellate Division is affirmed.
CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, AND TIMPONE join in JUSTICE LaVECCHIA's opinion.

See State v. Jones, 446 N.J. Super. 28, 30-31, 139 A.3d 1234 (App. Div.), certif. denied, 228 N.J. 72, 154 A.3d 697 (2016). The PCR court rejected defendant's petition, but the Appellate Division reversed and exercised original jurisdiction over the matter to permit defendant to file a notice of appeal. Id. at 37-38, 139 A.3d 1234. The State's petition for certification to this Court was denied. 228 N.J. at 72, 154 A.3d 697. Defendant's sentencing arguments thus come to us via an atypical route.

Defendant also asks that we revisit whether the denial of the right to allocution constitutes a due process violation. We decline to revisit that issue here.

Importantly, we are aware that we are considering this argument in the context of an appeal that has come by way of the appellate excessive sentence oral argument route, with its limited record on appeal.