**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4094-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BHAVUK UPPAL,

     Defendant-Appellant.

_____

          Submitted July 15, 2020 – Decided August 27, 2020

          Before Judges Hoffman and Currier.

          On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 16-05-0397.

          Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).

          Frederic M. Knapp, Morris County Prosecutor, attorney for respondent (John K. McNamara, Jr., Chief Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Bhavuk Uppal appeals from a December 1, 2017 judgment of conviction (JOC) sentencing him to twenty-one years of imprisonment for vehicular homicide. On appeal, he challenges the September 26, 2017 trial court decision which denied his motion to suppress the results of the toxicological samples taken at the hospital by medical personnel during the course of treatment following the accident. We affirm, with a limited remand to correct the JOC.

I

On May 19, 2016, a Morris County grand jury returned Indictment No. 16-05-0397, charging defendant with three counts of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4a(l) (counts one to three); three counts of second-degree reckless death by a vehicle (vehicular homicide), N.J.S.A. 2C:ll-5a (count four to six); three counts of third-degree causing death while driving with a suspended license, N.J.S.A. 2C:40-22a (count seven to nine); two counts of fourth-degree assault by a vehicle, N.J.S.A. 2C:12-lc(2) (count ten and eleven); third-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10c (count twelve); and fourth-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10b (count thirteen).

A-4094-17T3

We derive the following facts from the suppression motion record. On July 11, 2015, at approximately 1:37 a.m., defendant was driving home from work on Route 80 in Rockaway when he crashed his Cadillac Escalade into the rear of a Jeep stopped in traffic in a construction zone. This collision caused a chain reaction, when the Jeep collided with a Kia sedan, which crashed into another vehicle. The Kia quickly became engulfed in flames in the center lane. The three occupants of the Kia could not escape the vehicle and died at the scene. The two occupants of the Jeep also sustained injuries and required transport to a nearby hospital.

Meanwhile, defendant's vehicle overturned and landed on the right side of Route 80 in an embankment. An off-duty emergence medical technician (EMT) arrived at the scene, found defendant lying on the ground near his vehicle, and provided him aid. The EMT noted defendant's breath smelled of alcohol and his pupils reacted slowly. In response to the EMT's questioning, defendant acknowledged he drank alcohol. The EMT conveyed to Trooper Mudduser Malik that he smelled alcohol on defendant's breath. When asked by Trooper Malik, defendant denied consuming alcohol. According to defendant, he reached down to get a cigarette and when he looked back up, traffic had come to a halt and he was unable to stop before hitting the Jeep.

A-4094-17T3

Trooper Malik noted defendant's eyes were bloodshot and watery, and his eyelids were droopy. He also confirmed with defendant that he was the driver of the Escalade. A mobile intensive care nurse who provided aid to defendant observed him lethargic with slurred speech. He also detected an odor of alcohol emanating from defendant. Emergency medical service personnel removed defendant from the scene and had to restrain him to secure him on a stretcher before loading him into an ambulance.

The ambulance transporting defendant arrived at Morristown Memorial Hospital at 2:17 a.m., approximately forty minutes after the State Police received notification of the collision. At approximately 2:18 a.m., as part of normal procedures and protocols, the attending physician ordered hospital personnel to draw five samples of defendant's blood. The physician also ordered chest x-rays and radiological studies including CT scans of the head, chest and abdomen. Medical personnel admitted defendant to the emergency room at approximately 2:30 a.m., positioned a cervical collar on him, inserted a catheter while he slept, and obtained routine urine samples for analysis.

State police arrived at the hospital at approximately 3:09 a.m. and directed hospital personnel to retain blood samples for law enforcement. Hospital personnel filled out a "general laboratory requisition" form, which indicated

various specimens needed to be "save[d] for investigation." Police obtained a telephonic search warrant from the court at 4:33 a.m. to collect blood samples. Pursuant to the warrant, hospital personnel drew a sample of defendant's blood at 4:37 a.m. Police interviewed defendant's father who disclosed defendant drove the Cadillac with a suspended license and without permission, was recently hospitalized for a suicide attempt, and was addicted to heroin. At approximately 5:57 a.m., after medical personnel cleared defendant for release, police took him into custody.

Judge James Demarzo authorized a search warrant for the collection and analysis of the blood samples taken by the medical personnel at the hospital. Law enforcement retrieved the samples and forwarded them to the State Police laboratory for analysis.

Judge DeMarzo also signed an order, pursuant to State v. Dyal, 97 N.J. 229 (1984) and Rule 7:7-8, authorizing the State to obtain a certified copy of defendant's toxicology report and other medical records related to the analysis of blood and urine samples taken from defendant for medical diagnosis. The records disclosed evidence of the use of opiates by defendant and all but one of the samples indicated a blood alcohol level of .08 at the time of the accident.

5

On September 26, 2017, Judge Stephen J. Taylor granted in part and denied in part the State's motion to admit evidence, pursuant to N.J.R.E. 404(b). The judge denied defendant's motion to suppress his initial blood and urine samples taken by medical personnel prior to the issuance of the telephonic warrant. Defendant argued medical personnel obtained his blood and urine not for medical purposes but rather for forensic purposes without a warrant, contrary to Missouri v. McNeely, 569 U.S. 141 (2013). The judge rejected defendant's argument explaining,

> there is no evidence that medical personnel drew blood and urine at the request of law enforcement or for purposes other than medical diagnosis and treatment. The hospital records clearly established that medical personnel ordered the draws, and there is no indication that law enforcement ordered or directed any of the initial draws.

Judge Taylor also noted the medical records revealed defendant was evaluated by medical personnel for extensive trauma. Thus, the judge reasoned the extensive testing was "compelling proof that medical personnel were concerned regarding possible injuries to [] defendant, and that the diagnostic tests, including the blood and urine draws, were not a pretext." Additionally, the judge rejected defendant's remaining argument, finding he was "not under

A-4094-17T3

arrest or otherwise in custody of law enforcement when he was strapped to the stretcher" as preparation for transport to the hospital by medical personnel.

On June 28, 2016, pursuant to a plea agreement, defendant pled guilty to three counts of second-degree reckless death by a vehicle (vehicular homicide), N.J.S.A. 2C:11-5A (counts four to six). He also pled guilty to operating under the influence of alcohol, N.J.S.A. 39:4-50 and driving while suspended, N.J.S.A. 39:3-40.

On December 1, 2017, Judge Taylor held defendant's sentencing hearing. The judge found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner); three, N.J.S.A. 2C:44-1(a)(3) (risk defendant will commit another offense); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). Regarding aggravating factor one, the judge found the nature and circumstances of defendant's actions endangered other drivers and went "beyond that degree of recklessness needed for vehicular homicide." He noted that defendant admitted at his plea hearing that he operated his vehicle after drinking four shots of whisky, without permission from the owner, and while his license was suspended. The judge highlighted that the proofs showed defendant

traveled at excessive speed, failed to notice construction signs warning of traffic slowdowns and merging lanes, failed to observe traffic slowing down in front of him, failed to observe the roadway, having bent down to retrieve a cigarette according to his plea, although other credible evidence suggests he was bending down to retrieve a hypodermic needle recovered from the car; and failed to apply the brakes prior to plowing into the rear-end of the victim's vehicle while traveling at excessive speed.

Addressing aggravating factor three, the judge noted defendant's juvenile adjudication for robbery, prior disorderly persons offense, horrendous driving record, substance abuse history, and failure to obtain long-term treatment for his substance abuse despite opportunities to do so, weighed against him. The judge gave this factor "very significant weight."

Regarding aggravating factor nine,[1] Judge Taylor noted a "compelling need" to deter defendant specifically and others from violating laws that threaten highway travelers. The judge gave "significant weight" to all three aggravating factors and found they substantially outweighed the "non-existent mitigating factors."

---

[1] The JOC incorrectly lists that the judge found aggravating factor six, rather than aggravating factor nine. As a result, we remand for the court to enter a corrected JOC.

The court sentenced defendant in accordance with the plea agreement to seven years on count four, seven years on count five, and seven years on count six. The court ordered all counts to run consecutively for an aggregate sentence of twenty-one years, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. In addition, the judge imposed a total of nine years of parole supervision upon defendant's release from prison. The court ordered concurrent sentences for the motor vehicle convictions, including the mandatory term of 180 days in jail for a third driving while intoxicated conviction. Defendant received an 874-day credit for time served. In addition to the mandatory fees and assessments, the court suspended defendant's driving privileges for ten years upon completion of his sentence.

On appeal, defendant presents the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE BLOOD DRAW BECAUSE IT WAS OBTAINED WITHOUT HIS CONSENT, EXIGENCY OR A WARRANT AND WAS NOT FREELY AND VOLUNTARILY GIVEN. U.S. CONST. AMENDS. IV AND XIV; N.J. CONST. ART. I, PAR. 7.

A-4094-17T3

A. The seizure was an improper arrest not premised on probable cause.

    i. The police seizure of Uppal was an arrest.

    ii. There was no probable cause for the arrest.

B. There was no exigency, warrant, or consent for the blood or urine draws.

POINT II

THE TRIAL COURT IMPOSED SENTENCE AFTER IMPROPERLY CONSIDERING UNPROVEN CHARGES, CONSIDERING DEFENDANT'S MENTAL HEALTH ISSUE AS AN AGGRAVATOR WITHOUT EXPLANATION, AND FAILING TO CONSIDER THE LIKELIHOOD THAT THE YOUTHFUL DEFENDANT WOULD NOT REOFFEND.

A. Consideration of dismissed charges.

B. The use of mental illness as an aggravating factor.

C. Failure to consider the likelihood that Uppal would not reoffend.

II

We first address defendant's argument that he was under arrest at the time he was "removed from the scene and bodily fluids were taken from him." He

10

asserts there "was no probable cause to believe [he] was intoxicated, and therefore, no reason to arrest him and forcibly take him to the hospital." He alleges the original blood draw "was independently unconstitutional because it took place absent exigency, consent, or a warrant."

We apply a highly deferential standard of review to a trial judge's determination on a motion to suppress. State v. Gonzales, 227 N.J. 77, 101 (2016). We will uphold "the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Those factual findings are entitled to deference because the motion judge . . . has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (citations omitted) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Both the United States Constitution and the New Jersey Constitution guarantee freedom from unreasonable searches and seizures by the government. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Taking a "blood sample for the purpose of alcohol-content analysis constitutes a search" under the Fourth Amendment. State v. Zalcberg, 232 N.J. 335, 345 (2018) (citing Schmerber v. California, 384 U.S. 757 (1966)).

Applying the above standards, we discern no reason to reverse the denial of defendant's motion. The judge found the attending physician's order to hospital personnel to draw five samples of defendant's blood and urine was routine medical care appropriately administered to him after a serious car crash. The judge noted the numerous tests ordered indicated the medical personnel's concerns that defendant may have suffered serious internal injuries.

We also discern no basis to disturb the judge's conclusion that defendant was not under arrest or otherwise in custody of law enforcement when he was strapped to the stretcher. Gonzales, 227 N.J. at 101. Defendant's reliance on McNeely is misplaced because in that case the police drove the defendant to the hospital and "directed a hospital lab technician to take a blood sample," without first obtaining a warrant. 569 U.S. 141, 146 (2013). Here, an ambulance drove defendant to the hospital; in addition, the record contains no evidence that police officers accompanied defendant to the hospital or that officers were present when medical personnel obtained the original blood and urine samples. Defendant additionally failed to provide any evidence that police ordered or directed any of the initial draws. The record reflects that medical personnel drew defendant's blood at 2:18 a.m., nearly an hour prior to police arriving. Thus, we find no basis to support defendant's contention that police ordered the

initial blood draw nor do we find the blood draw constituted a search requiring a warrant because the blood was drawn by medical personnel for treatment purposes. Zalcberg, 232 N.J. at 345.

We next address defendant's claim of sentencing error. Defendant argues the judge inappropriately considered contacts with law enforcement "that did not result in any showing of culpability." Defendant asserts the judge improperly used his mental health history that included "hospitalizations, depression, and suicide attempts, as an aggravating factor" when it could only be used as a mitigating factor. Defendant asserts the judge also failed to consider his age, as he was twenty-two years old at the time of the offense.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). In reviewing a sentence, the court must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

13

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); Roth, 95 N.J. at 364-65).

Here, the judge found aggravating factors one, three and nine, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense), (3) (risk that defendant will commit another offense), (9) (need to deter defendant and others from violating the law). The judge found that the aggravating factors outweighed the non-existent mitigating factors.

The judge found there was a need to deter defendant and others from violating the law. The judge noted defendant had not been receptive to substance abuse treatment and because he remains untreated, he poses a considerable risk to re-offend. The judge did not abuse his discretion in relying on these facts. Additionally, the judge noted defendant's "abysmal driving record." There is sufficient evidence in the record to support the judge's finding of aggravating factors three and nine.

In short, our review establishes that the sentencing court did not err, and the sentence was within the guidelines, the aggravating and lack of mitigating

A-4094-17T3

factors found were based on "competent and credible evidence in the record," and the sentence does not shock our judicial conscience.  See State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting Roth, 95 N.J. at 364-65 (1984)).  However, a remand is warranted to correct the JOC, which mistakenly refers to aggravating factor six, when it is clear the judge found aggravating factor nine applied.

Affirmed, with a limited remand for the trial court to enter a corrected JOC.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4094-17T3