NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1592-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TYRELL S. LANSING,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 3, 2024

APPELLATE DIVISION

Submitted August 27, 2024 – Decided October 3, 2024

Before Judges Gooden Brown, DeAlmeida and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 21-12-0895.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Alison Perrone, Deputy Public Defender, of counsel and on the brief).

Robert J. Carroll, Morris County Prosecutor, attorney for respondent (Tiffany M. Russo, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant Tyrell S. Lansing, on leave granted, appeals from the September 18, 2023 order of the Law Division denying his motion to allow his expert witness to testify remotely at an evidentiary hearing and at his jury trial. We affirm.

## I.

In 2021, a grand jury indicted defendant, charging him with: (1) first-degree murder, N.J.S.A. 2C:11-3(a)(1); (2) second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); (3) second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); (4) second-degree possession of a handgun by a certain person, N.J.S.A. 2C:39-7(b)(a); and (5) fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1).

The charges arise from a shooting death on a Morristown street in the early morning hours of August 18, 2021. Investigators recovered video footage from the morning of the shooting. During its case-in-chief, the State intends to present a reconstruction of the shooting using the video footage to identify defendant as the shooter. To create the reconstruction, the State retained an expert in photogrammetry, a scientific field involving the use of photography in surveying and mapping to measure the distance between objects. In December 2022, the State's expert produced a report containing

visualizations and graphics he will testify constitute a reconstruction of the shooting. In addition to photogrammetry, the State's expert used forensic video analysis, bullet trajectory analysis, and other sciences in his report.

Defendant subsequently retained an expert who specializes in forensic video analysis to review the report of the State's expert, issue a report, and testify at an Olenowski hearing challenging the admissibility and reliability of the State's expert's report, and at trial, if necessary.[1] Defendant's expert spent more than forty hours reviewing discovery. At the time the trial court issued the order under appeal, he had not issued a report.

Before he was retained, defendant's expert informed defendant's counsel that he would have to testify virtually at any evidentiary hearing or trial because he has a heart condition, was recovering from surgery, and is the primary caregiver for his seriously ill spouse. Accordingly, in August 2023, defendant moved for leave to have his expert testify remotely.

In support of the motion, defendant submitted an affidavit from his counsel stating that the expert suffers from atrial fibrillation and at the time of the application was recovering from hernia surgery. According to the affidavit, the expert is also the sole caregiver for his spouse, who has

---

[1] State v. Olenowski, 253 N.J. 133 (2023) (establishing the standards for admission of expert testimony at criminal and quasi-criminal trials).

undergone chemotherapy, multiple surgeries, and other treatments for cancer and is limited in performing her daily life functions. The expert assists his spouse with all of her daily activities, preparing a six-meal-per-day regimen to meet her dietary needs, ensuring her physical safety, and dispensing her medications. Due to his spouse's immunocompromised state, the expert will not risk exposure to viruses, including COVID-19. The affidavit was not accompanied by medical evidence detailing the expert's condition or that of his spouse or offering the opinion that the expert should avoid appearing in public. The expert lives in Dutchess County, New York, approximately an hour-and-a-half drive from Morristown, where the hearing and trial would take place, and is able to make that trip.

The State declined to consent to the expert's remote testimony and opposed defendant's motion.

On September 18, 2023, the trial court issued a comprehensive written decision denying the motion. The court first addressed the apparent tension between Rule 1:2-1(b), which permits testimony by contemporaneous transmission on a showing of good cause and with appropriate safeguards, and the October 27, 2022 Order of the Supreme Court (2022 Order), which directs that criminal jury trials shall proceed in person and that evidentiary hearings in criminal matters shall proceed in person unless the parties consent to a virtual

proceeding. The trial court rejected the State's contention that in light of the 2022 Order, the court could not permit defendant's expert to testify remotely at the evidentiary hearing without the State's consent and could not permit his remote testimony at trial under any circumstances. The court concluded that the 2022 Order, the last in a series of orders in which the Supreme Court addressed the framework for court operations during the COVID-19 emergency, is "temporary in nature," unlike Rule 1:2-1(b). In addition, the trial court reasoned that because defendant is seeking to have only one witness testify remotely, and not to have the entire evidentiary hearing and trial conducted remotely, the Rule, and not the 2022 Order, controls.

In its analysis of the "good cause" and "appropriate safeguards" standards set forth in the Rule, the trial court applied the factors established in Pathri v. Kakarlamath, 462 N.J. Super. 208, 216 (App. Div. 2020), which was issued prior to both the adoption of Rule 1:2-1(b) and the issuance of the 2022 Order. The trial court found that the intended testimony of defendant's expert concerned "the heart of the matter" in dispute between the parties: the identification of defendant as the shooter. While defendant's expert had not yet issued a report, the trial court found that, although not necessarily disputing the reliability of the underlying science used by the State's expert, defendant's expert will dispute the methods the State's expert used in analyzing

the evidence and creating the reconstruction. The trial court found that "the anticipated testimony will be offered to address sharply disputed facts, that is, whether the State's expert testimony is admissible at trial, and if so, the reliability of that evidence." The court found that the anticipated testimony of defendant's expert will be "significantly important to the anticipated Olenowski hearing as well as to the trial itself if the court deems the expert testimony admissible."

In addition, the trial court found that the anticipated testimony of defendant's expert "is likely to be extensive, highly technical, and significantly disputed . . . ."[2] The court also found that the credibility of defendant's expert, and an assessment of his knowledge, skill, experience, and training will be at issue, both at the evidentiary hearing and at trial.

The court also found that "[i]t is reasonable to assume both experts will be extensively cross-examined regarding their reports and opinions, and allowing the defense expert to appear virtually may hinder the ability of the

---

[2]  As noted above, at the time that the trial court issued its decision, defendant's expert had not issued a report. During the pendency of this appeal, the expert issued a report. We granted defendant's motion to supplement the record with the report, which we have reviewed. Although defendant argues that the report highlights the non-technical character of the expert's intended testimony, our review supports the trial court's characterization of the expert's intended testimony as extensive, highly technical, and raising disputed issues.

State to zealously cross-examine the witness."  In support of this finding, the court noted that

> although certain material can be forwarded to the defense expert in advance, it is difficult to anticipate every potential area of cross-examination prior to hearing direct testimony.  If certain material has not been previously provided to the expert, cross-examination may be limited.  Further, uploading certain material in advance may serve to alert the witness of potential areas of cross-examination and place the State at a disadvantage.

The court found that even though it, and not a jury, will be the factfinder at the evidentiary hearing, the State will be at a disadvantage because of the highly technical nature of the expected testimony.  Presentation of remote testimony to the jury at trial would, the court found, make the difficult task of assessing the expert's credibility considerably more problematic.

The trial court found that defendant's expert could make the trip to Morristown to testify with minimal financial burden to the Public Defender's Office.  In addition, the court found requiring the expert to appear in person would not delay the hearing or trial, given his proximity to the courthouse.

The court recognized that denial of defendant's motion may require him to retain a new expert.  However, it found that the expert's desire not to appear in person was readily foreseeable, as the expert was aware of his medical condition and the need to care for his spouse at the time he was retained.

A-1592-23

Although the court stated that it appeared the expert did not inform defendant's counsel of his desire to testify remotely until after he was retained, defendant's merits brief states that the expert notified defendant's counsel before he was retained. The court concluded that any delay in retaining a new expert in the event that the motion is denied will be attributable to the defense.

Finally, the court found that, although the concerns raised by defendant's expert were legitimate, accommodations, such as masking, clear screens, and social distancing, could lessen the risk of contracting an infection while testifying in person.[3]

A September 18, 2023 order memorialized the trial court's decision.

On October 27, 2023, we denied defendant's motion for leave to appeal the September 18, 2023 order.

On January 23, 2024, the Supreme Court granted defendant's motion for leave to appeal, and summarily remanded the matter for our consideration.

Defendant raises the following argument.

> THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION DENYING DEFENDANT'S MOTION TO PERMIT HIS EXPERT WITNESS TO TESTIFY REMOTELY.

---

[3] The court did not address steps the expert could take to arrange for professional care for his spouse during his live testimony.

II.

A trial judge has broad discretion in controlling the courtroom and court proceedings. State v. Pinkston, 233 N.J. 495, 511 (2018); State v. Jones, 232 N.J. 308, 311 (2018). "[W]e apply the abuse of discretion standard when examining the trial court's exercise of that control." Jones, 232 N.J. at 311.

A trial court abuses its discretion "by relying on an impermissible basis, by relying upon irrelevant or inappropriate factors, by failing to consider all relevant factors, or by making a clear error in judgment." State v. S.N., 231 N.J. 497, 500 (2018); see also State v. Chavies, 247 N.J. 245, 257 (2021). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J 561, 571 (2002)) (alteration in original). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

The advent of the COVID-19 emergency in the State in March 2020 necessitated adjustments to the longstanding practice of almost all proceedings

A-1592-23

taking place in-person in our courts. "Experience with the various video conferencing and live streaming applications employed during that emergency laid the groundwork for rule adoptions providing for the use of these technologies in appropriate circumstances." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:2-1 (2025). One such rule, adopted effective September 1, 2021, was Rule 1:2-1(b). That rule provides:

> Contemporaneous Transmission of Testimony. Upon application in advance of appearance, unless otherwise provided by statute, the court may permit testimony in open court by contemporaneous transmission from a different location for good cause and with appropriate safeguards.
>
> [R. 1:2-1(b).]

During the COVID-19 emergency, the Supreme Court also issued a number of orders concerning the conduct of court proceedings. On November 18, 2021, the Court issued an order "to provide a framework for transition from almost all in-person proceedings to a future that uses technology to provide expanded options for access, participation, timeliness, and justice. That Order stipulated proceedings that must continue in person and those that could or would proceed virtually." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:2-1 (2025).

With the COVID-19 emergency lessening in severity, the Court issued the 2022 Order. In that Order, the Court stated,

[t]his Order updates the framework for those court events that are to be conducted in person and those that in general will proceed in a virtual format. Informed by experience, it establishes a more sustainable approach to court operations in order to optimize access, participation, and the timely administration of justice.

. . . .

[W]ith expanded vaccination and treatment options, public health authorities agree that the virus poses less of a threat. In light of those changed circumstances, the Court has concluded all COVID-19 restrictions in court locations while maintaining the option for people to wear masks at their choice. In addition, judges also routinely exercise discretion to permit individuals to participate virtually as necessary for health and other reasons.

[2022 Order, preamble (emphasis added).]

With respect to criminal matters, the Court ordered, in relevant part, that

1. Criminal jury trials shall continue to proceed in person.

2. The following matters will generally proceed in person but may proceed virtually with the consent of all parties; consent of a party will not be required if that party is absent and unreachable:

a. CRIMINAL: . . . evidentiary hearings . . . .

[2022 Order, paragraphs 1-2 (a).]

We reject the State's argument that paragraphs 1-2(a) of the 2022 Order preclude the trial court from allowing defendant's expert to testify remotely at

the evidentiary hearing without the State's consent and at trial in any circumstances. The Supreme Court has the authority to "make rules governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts." N.J. Const. art. VI, § 2, ¶ 3. The Court's "[r]ule-making authority may be exercised by the promulgation of formal rules to be included in the published Rules of Court . . . . It may also be exercised in the form of general directives or specific orders." In re Yaccarino, 101 N.J. 342, 351 (1985) (citation omitted).

Both Rule 1:2-1(b) and the 2022 Order were promulgated under the Supreme Court's constitutional authority and address the use of remote testimony in criminal proceedings. Our comparison of these authorities revealed no conflict in their provisions. The 2022 Order provides a general framework for how the many categories of proceedings heard in our courts generally will take place. Criminal jury trials will take place in person, as will evidentiary hearing in criminal matters, unless both parties consent to a virtual hearing. Issued after Rule 1:2-1(b) was adopted, the 2022 Order does not mention the rule, limit its provisions, or contradict its terms. To the contrary, in its preamble, the 2022 Order recognizes that "judges also routinely exercise discretion to permit individuals to participate virtually as necessary for health and other reasons." This is a reference to the authority that judges exercise

A-1592-23

under Rule 1:2-1(b). As we understand the 2022 Order, it establishes that criminal jury trials and evidentiary hearings (in the absence of consent by all parties) will proceed in person, but the trial court retains its authority to permit remote testimony by witnesses at those proceedings where "good cause" is shown and "appropriate safeguards" are imposed.

Defendant did not request the entire evidentiary hearing or his jury trial be held remotely. Those proceedings will take place in person. He requested only that his expert be permitted to testify remotely at those proceedings due to the medical conditions of the expert and his spouse. The trial court was, therefore, authorized to entertain defendant's request under Rule 1:2-1(b).[4]

Rule 1:2-1(b) was adopted after our courts experienced more than a year of remote proceedings necessitated by the COVID-19 emergency. We issued our opinion in Pathri, on which the trial court relied when applying the Rule, in January 2020, before the COVID-19 emergency reached New Jersey. We acknowledge that when we issued Pathri, we did not have the benefit of the experience that informed the Court when it adopted Rule 1:2-1(b). The factors set forth in Pathri, however, were based in part on a federal rule of civil

---

[4] We see no support in the record for the trial court's characterization of the 2022 Order as temporary. While paragraph 10 of the Order indicates that it "remains subject to ongoing review and potential future refinement," nothing in the Order indicates that it expires after a stated period.

A-1592-23

procedure which mirrors Rule 1:2-1(b) and are useful guidelines for deciding "good cause" and "appropriate safeguards" under the Rule.

In Pathri, one of the parties had moved out of the country after filing a complaint for divorce. 462 N.J. Super. at 212. Shortly before the scheduled trial date, he moved to appear and testify remotely via contemporaneous video transmission because he was unable to obtain a visa to return to the United States. Ibid. The trial court denied the motion. Ibid.

On appeal, in the absence of a court rule or Supreme Court Order addressing virtual testimony, we held that "we see no reason why a family judge could not permit testimony by contemporaneous video transmission in appropriate circumstances." Id. at 214. Relying in part on a federal rule of civil procedure that permitted virtual testimony "[f]or good cause in compelling circumstances and with appropriate safeguards," id. at 215 (citing Fed. R. Civ. P. 43(a)), we established seven factors to be considered by a trial court when deciding whether to permit a witness to testify remotely. We held that a judge should consider: (1) "the witness' importance to the proceeding;" (2) "the severity of the factual dispute to which the witness will testify;" (3) "whether the factfinder is a judge or a jury;" (4) "the cost of requiring the witness' physical appearance in court versus the cost of transmitting the witness' testimony in some other form;" (5) "the delay caused by insisting on

14

the witness' physical appearance in court versus the speed and convenience of allowing the transmission in some other manner;" (6) "whether the witness' inability to be present in court at the time of trial was foreseeable or preventable;" and (7) "the witness' difficulty in appearing in person."  <u>Id.</u> at 216.

We explained that the logic of the first factor is that "[t]he greater the witness' importance in the dispute, the heavier should be the burden of excusing in-person testimony.  But, if the witness is merely conveying some information of relatively minor importance, or if the witness is a custodian of records, or the like, the burden ought not be onerous."  <u>Ibid.</u>

The second factor "dovetail[s]" with the first factor.  <u>Ibid.</u>  Where a witness intends to testify with respect to a dispute "that goes to the heart of the matter," in-person testimony is favored.  <u>Ibid.</u>  This is particularly true where the credibility of the witness will be a significant factor and the "factfinder is better served in its truth-finding function by having testimony in person rather than by contemporaneous transmission."  <u>Id.</u> at 217-18.

The identity of the factfinder, the third factor, is material to determining whether to permit remote testimony.  "In many instances a judge would [more] likely overcome whatever barrier to ascertaining the witness' credibility and

15

demeanor is created by contemporaneous video transmission than would a jury of laypersons not accustomed to weighing testimony in any form." Id. at 218.

The fourth factor weighs the costs associated with producing the witness in person against the costs associated with providing remote testimony. "That would not only include the travel and lodging expenses necessarily incurred but other costs, such as the impact on a party's income caused by a loss of time from work." Ibid. "Judges should consider whether the cost of insisting on in-person testimony is simply not worth whatever the impact on the factfinder's assessment of the witness or, for that matter, what it is the parties are fighting over." Id. at 218-19. "The delay in the case's disposition is also a factor." Id. at 219.

With respect to foreseeability, we observed that "[a] sudden business trip or family member's illness may require a party to travel abroad at or around the time of a trial . . . ." Ibid. Thus, "a judge may inquire as to the circumstances that led to that trip and determine whether the witness was faced with the unavoidable consequence of being outside the jurisdiction at the time of trial." Ibid. "In making the determination whether to permit testimony by contemporaneous video transmission, a judge has a right to know what steps [the moving party] took in advance . . . to avoid the need for the relief now sought . . . and assess the bona fides of that party's actions." Ibid. We noted

16

that "[a] witness' health may also cause the type of difficulty that would inure in favor of" remote testimony. Id. at 219 n.7.

With respect to appropriate conditions that may be imposed, we noted that

> [t]he judge, for example, may require a particular size monitor or multiple monitors in the courtroom for the transmission, as well as insist on a particular framing of what the video transmits (in other words, whether the image is not just of the witness' face but also enough of his body so that the judge could better appreciate his overall demeanor). The judge has the right to expect a clear video and audio, and that the remote witness testify from a place suitable to the solemnity of the proceeding. Copies of documents that the parties expect to show the witness should be forwarded to that location in advance.
>
> [Id. at 220-21.]

We have carefully reviewed the record and conclude that the trial court properly considered each of the Pathri factors and made findings with respect to each factor that are supported by the record. The technical and complicated nature of the expert's expected testimony, the prevalent role video evidence will play when determining whether the State's expert's opinion is admissible and, if so, credible, the difficulty the State would have in cross-examining defendant's expert, the physical proximity of defendant's expert to the courthouse, defendant's knowledge of the expert's desire to testify remotely when he retained the expert, and the absence of medical evidence requiring

17

remote testimony, all support the conclusion that the trial court did not mistakenly exercise its discretion when denying defendant's motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1592-23