**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3980-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JOSHUA SIMMONS,

    Defendant-Respondent.

_____

Argued February 25, 2026 – Decided March 10, 2026

Before Judges Gummer and Paganelli.

On appeal from the interlocutory orders of the Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 24-01-0099, 24-05-0675 and 24-07-0886.

Colleen Kristan Signorelli, Assistant Prosecutor, argued the cause for appellant (Wayne Mello, Hudson County Prosecutor, attorney; Colleen Kristan Signorelli, on the brief).

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Peter T. Blum, on the brief).

PER CURIAM

On leave granted, the State appeals from orders granting defendant Joshua Simmons's motion to compel production of the mental-health and psychiatric records of A.L., an alleged crime victim, and requiring the production of those records for an in camera review.[1]  We vacate the orders and remand for further proceedings because the court abused its discretion by granting the motion even though A.L. had not received notice of it and by making factual findings based representations about a document it had not seen and was not in evidence.

Defendant has been charged with crimes in three indictments based on three separate alleged incidents involving A.L.

On May 22, 2024, a grand jury returned Indictment No. 24-05-0675, charging defendant with:  second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree robbery, N.J.S.A. 2C:15-1(a)(1); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); and fourth-degree contempt of a domestic-

---

[1]  We use initials to reference the alleged victim because of the confidential nature of the allegations and information contained purported mental-health and psychiatric records at issue.  See R. 1:38-3(a)(2) (deeming confidential medical and psychiatric records) and R. 1:38-3(c)(12) (excluding from public access the names of alleged victims of domestic violence).

A-3980-24

violence order, N.J.S.A. 2C:29-9(b)(1). Those charges were based on an incident that occurred on January 6, 2023, when, according to A.L., defendant assaulted her with a handgun.

On July 2, 2024, a grand jury returned Indictment No. 24-07-0886, charging defendant with: third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1); third-degree theft, N.J.S.A. 2C:20-3(a); and fourth-degree contempt of a domestic-violence order, N.J.S.A. 2C:29-9(b)(1), N.J.S.A. 2C:29-9(b)(1). Those charges are based on a March 20, 2023 report A.L. made to police, alleging defendant had ransacked her apartment, had caused property damage, and had stolen approximately $5,000 worth of clothing and sneakers.

On January 24, 2024, a grand jury returned Indictment No. 24-01-0099, charging defendant with: first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-1(a)(1); second-degree aggravated assault causing serious bodily injury, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). Those charges were based on an incident that occurred on June 23, 2023.

According to the State, on the morning of June 23, 2023, a witness called 9-1-1 and reported A.L. had been stabbed. The witness stated she had observed

3

defendant, who was identified as A.L.'s former boyfriend and the father of her child, thrust a knife into A.L.'s midsection while A.L. was on the kitchen floor of her apartment. Responding police officers found A.L. bleeding and in critical condition. A.L. was transported to a hospital for treatment. While she was in the hospital, A.L. was shown a picture of defendant and identified him as the assailant. According to defendant, police had responded to a report made by A.L. that defendant had stabbed her with a knife.

On April 28, 2025, defendant moved to compel discovery of A.L.'s "mental health/psychiatric records." Defendant moved under all three indictments, contending they were "all based upon statements from" A.L. Defendant asserted he was entitled to discovery of the records based on information purportedly contained in a 2018 supplemental report prepared by an officer with the county prosecutor's office. According to defendant, he was arrested in 2018 after A.L. told police he had hit her in the face with a handgun. Defendant described the 2018 supplemental report as indicating A.L. had recanted her allegation and as paraphrasing her statements about having "problems coping with her anger along with other mental illnesses" and having been "in therapy but ha[ving] not attended a session or received treatment for some period of time." In support of the motion to compel, defendant argued he

was entitled to discovery of A.L.'s mental-health and psychiatric records because he needed those records to prepare a defense and to cross-examine A.L. at trial. A copy of the supplemental report was not provided to the trial court or this court.

Opposing the motion, the State argued defendant had failed to satisfy his "heavy burden" to overcome the physician-patient privilege. It emphasized that the 2018 supplemental report did not identify any specific medical diagnosis or treatment plan and defendant had not established a connection between prior mental-health illnesses and the current charges. During oral argument of defendant's motion, the State represented it did not have custody of or control over A.L.'s records.

The court heard argument and, on July 9, 2025, granted the motion, entering in each case an identical order in which it stated "access to information within . . . [A.L.'s] . . . mental health/psychiatric records may be necessary for determination of issues before the [c]ourt" and "it is not possible for this court to decide the [d]efendant's motion without the benefit of review of the records in order to determine relevance." With no temporal limitation on the scope of the production, the court ordered that A.L.'s "mental health/psychiatric records" be submitted to the court for an in camera review. It restricted use of the

A-3980-24

information contained in the records, if it deemed the records discoverable, to "only . . . the pending matter (Indictment No. 24-01-00099-I)" and barred disclosure and dissemination of that information "to any other person for any other reason." The court directed the State to advise defense counsel by July 23, 2025, if it determined records did not exist or could not be located and the parties to advise the court in writing prior to a July 30, 2025 conference if they disagreed about whether the records existed.

While the State's motion for leave to appeal was pending, the trial court issued an amplification pursuant to Rule 2:5-1(d). In its amplification, the court concluded defendant had "provided ample support for piercing the victim's patient[-]physician privilege." The court found defendant had established the three elements of the privilege-piercing test articulated by the Court in In re Kozlov, 79 N.J. 232, 243-44 (1979). Specifically, the court concluded: defendant had demonstrated the first and second prongs of the test because A.L.'s purported "statement connecting her 'mental illnesses' to the false report supports the [d]efendant's legitimate need for the information" and A.L.'s "psychological condition, if true, is also relevant and material." Regarding the third prong, the court concluded, with no explanatory statement, that "no less intrusive means" to obtain the information existed. The court indicated it would

6

conduct an in camera review to determine if any of the records should be redacted. It also acknowledged it had "neglected" to address whether the records existed and stated that identification of any provider would be addressed at the next scheduled conference.

We granted the State's motion for leave to appeal. On appeal, the State makes the following arguments:

> POINT I
>
> THE MOTION COURT ERRED BY ORDERING AN IN CAMERA REVIEW OF THE VICTIM'S MENTAL HEALTH/PSYCHIATRIC RECORDS WITHOUT CONDUCTING ANY MEANINGFUL LEGAL ANALYSIS TO DETERMINE WHETHER DEFENDANT MET HIS BURDEN TO PIERCE THE PRIVILEGE.
>
> POINT II
>
> THE MOTION COURT ABUSED ITS DISCRETION BY FINDING DEFENDANT MET HIS BURDEN TO JUSTIFY PIERCING THE PRIVILEGE.
>
> POINT III
>
> EVEN IF AN IN CAMERA REVIEW WERE APPROPRIATE, THE MOTION COURT'S ORDER FOR THE STATE TO PRODUCE ANY AND ALL OF THE VICTIM'S MENTAL HEALTH/PSYCHIATRIC RECORDS, ASSUMING THEY EVEN EXIST, IS UNDULY BROAD AND BURDENSOME.

A-3980-24

We "review [a] trial court's discovery ruling for an abuse of discretion." State v. Kane, 449 N.J. Super. 119, 132 (App. Div. 2017). "An abuse of discretion occurs by making decisions 'without a rational explanation, [that] inexplicably departed from established policies, or [that] rested on an impermissible basis.'" State v. Chambers, 252 N.J. 561, 594-95 (2023) (alterations in the original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Therefore, a reviewing court "need not defer . . . to a discovery order that is well wide of the mark, or based on a mistaken understanding of the applicable law." State v. Knight, 256 N.J. 404, 416 (2024) (quoting State v. Hernandez, 225 N.J. 451, 461 (2016)) (internal quotation marks omitted).

"New Jersey law has reveal[ed] a steady movement . . . to recognize and enhance the rights of crime victims." Chambers, 252 N.J. at 583-84 (alteration and omission in original) (quoting State v. Tedesco, 214 N.J. 177, 196 (2013)). A motion to compel production of mental-health treatment records "implicate[s] important issues concerning the confidentiality rights of third party crime victims." Kane, 449 N.J. Super. at 132.

In Chambers, the Court held that "[i]f a defendant files a motion seeking access to pre-incident mental health records, a victim is entitled to notice by the county prosecutor's office and must have an opportunity to be heard, with or

8

without independent counsel." 252 N.J. at 589. We recognize the defendant in Chambers was charged with sexual assault, N.J.S.A. 2C:14-2(c)(1), and not aggravated assault, like defendant. However, the concerns the Court expressed in Chambers about crime victims' rights and the provisions of the Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -38, cited by the Court that guarantee those rights apply equally here. 252 N.J. at 589 (citing N.J.S.A. 52:4B-36(b), (h), and (k)). That the State failed to provide notice to the alleged crime victim does not eliminate the court's obligation to ensure compliance with threshold procedural safeguards governing third-party discovery and victim participation consistent with Chambers.

A.L. was not served with a copy of the motion and had no notice of it. Those facts are undisputed. Thus, the court granted the motion and compelled the production of highly sensitive medical records, assuming they exist, without affording A.L. notice and an opportunity to be heard. The State's opposition to the motion and whatever assumptions the parties and the court may have made about how A.L. would have reacted to the motion had she received notice of it were insufficient to protect her interests.

As we held in Kane:

> We recognize the prosecutor sought to protect [the alleged victim's] privilege by resisting the motion. Yet,

the prosecutor represents the State, not [the alleged victim]. The privilege belongs to her. She possessed or controlled the records and had the greatest interest in their confidentiality. Furthermore, an order compelling discovery would presumably have been directed to her, not the State. See [State in Int. of] A.B., . . . 219 N.J. [542,] . . . 564 n.4 [(2014)] (stating that discovery order—in that case, to inspect victim's home—may be submitted to the alleged victim as opposed to the prosecutor's office).

Although a victim may be content to rely on the State's opposition, she should be afforded the option to advocate separately for preserving her privilege. As a crime victim, she was entitled "[t]o appear in any court before which a proceeding implicating the rights of the victim is being held." N.J.S.A. 52:4B-36(r). This included, in our view, the right to appear to oppose the motion seeking her records.

[449 N.J. Super. at 134 (fourth alteration in original).]

We reach the same conclusion here. The court abused its discretion by granting the motion to compel and requiring the production of A.L.'s mental-health and psychiatric records without affording A.L. notice of the motion or an opportunity to be heard.

We are also troubled that the court granted the motion without making any factual findings and then in its amplification made factual findings based on a document, the 2018 supplemental report, it had never seen and was not in evidence. The court did not make any factual findings regarding the application

10

of the patient-physician privilege or defendant's ability to pierce it on the record, in the orders it entered granting the motion, or in any attached statement of reasons. Given the important nature of the rights involved, the court should have set forth clear findings of fact that supported its decision to grant the motion. See R. 1:6-2(f) (when an explanation of a court's decision is "either necessary or appropriate," "the court shall append to the order a statement of reasons for its disposition").

In its amplification, the court made factual findings regarding the first two prongs of the Kozlov test. 79 N.J. at 243-44. Those findings were based wholly on the 2018 supplemental report, a document the court had not seen because it was not in the motion record. "The general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). We uphold "[a] trial court's factual findings in support of granting or denying a motion to [compel] . . . when those findings are supported by sufficient credible evidence in the record." State v. C.J.L., 471 N.J. Super. 477, 483 (App. Div. 2022) (second alteration in original) (quoting State v. A.M., 237 N.J. 384, 395 (2019)) (internal quotation marks omitted). The court's factual findings were not supported by evidence in the record.

In sum, we conclude the court abused its discretion in granting the motion to compel. The court granted the motion even though A.L. had not received notice of it and had not had an opportunity to respond to it. The court did not make factual findings to support its decision until it submitted the amplification and the factual findings in its amplification were based on a document that it had not seen and was not in the record. Accordingly, we vacate the July 9, 2025 orders and remand the case for further proceedings consistent with this decision. Before deciding the motion on remand, the court must confirm A.L. has received notice of the motion and has had an opportunity to respond. Before rendering any factual findings on the substance of the motion, the court must review the 2018 supplemental report that is the basis of the motion.

Having decided the appeal on those threshold issues, we need not address the parties' remaining arguments.

Vacated and remanded for further proceedings consistent with the opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

12

A-3980-24